UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
KROUTCHEV DEMOSTHENE,                          :
                                               :
                        Plaintiffs,            :
                                               :         **REPORT AND RECOMMENDATION**
                -against-                      :         14 CV 816 (SJ) (VMS)
                                               :
CITY OF NEW YORK, DEPARTMENT OF                :
CORRECTIONS COMMISSIONER DORA                  :
SCHRIRO, DETECTIVE JOHN ROBERTS,               :
JOHN AND JANE DOE POLICE OFFICERS 1-           :
10,                                            :
                                               :
                        Defendants.            :
------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

        In this civil rights action, brought pursuant to 42 U.S.C. §§ 1983 and 1985, Plaintiff

Kroutchev Demosthene ("Plaintiff") alleges in his Original Complaint that Defendants City of

New York, the former New York City Department of Corrections ("NYDOC") Commissioner

Dora Schriro ("Commissioner Schriro"), New York Police Department ("NYPD") Detective

John Roberts ("Detective Roberts"), and various John and Jane Doe police officers

("Defendants") violated and conspired to violate his constitutional rights and/or failed to

intervene when his rights were being violated.  Docket No. 1.  Plaintiff also brings numerous

supplemental New York State constitutional and tort claims arising from the same set of facts

which I will summarize and discuss below.  Id.

        Before the Court is Plaintiff's motion to file the Second Proposed Amended Complaint

pursuant to Federal Rule of Civil Procedure ("FRCP") 15(a) and FRCP 20(a).  Docket No. 11;

Docket No. 23-1 (a copy of the Second Proposed Amended Complaint).[1]  Defendants oppose,

---

[1] Plaintiff's motion originally sought leave to file the First Proposed Amended Complaint.
Docket No. 11-1.  In response to Defendants' opposition arguments, Plaintiff submitted the

Docket No. 12, and Plaintiff replies, Docket No. 20.[2]

In a nutshell, Plaintiff's complaint-amendment motion seeks leave to continue to include Commissioner Schriro and Detective Roberts as Defendants and leave to add ten new individuals Defendants (collectively I will refer to all twelve as "Proposed Defendants"). Docket Nos. 1, 20, 23-1. The Proposed Defendants are: Commissioner Schriro, Detective Roberts, Sergeant Pierre,[3] Detective Gary Haber ("Detective Haber"), Detective Alab Daab ("Detective Daab"), Detective Michael Granshaw ("Detective Granshaw"), Detective Anthony Puleo ("Detective Puleo"), NYDOC Captain Robert Ellis ("NYDOC Captain Ellis"),[4] Detective Ward, Sergeant Shaun Mara ("Sergeant Mara"), Lieutenant Dennis Klein ("Lieutenant Klein"), and Captain Chambers. Docket No. 23-1. Upon review of the motion and related papers, I find that Plaintiff should be permitted to add certain Proposed Defendants but not others, and I issue this report and recommendation sua sponte for the District Court's consideration. For the reasons stated in the report and recommendations below, I respectfully recommend that the District Court **grant in part** and **deny in part** Plaintiff's motion for leave to amend. I address the motion on a claim-by-claim basis following the order in which the Second Proposed Amended Complaint presents

Second Proposed Amended Complaint, which is the document that Plaintiff now seeks leave to file. Docket No. 23-1.

[2] I note that Plaintiff attached exhibits to one of his filings relating to this motion to amend. I will consider those filings, as Defendants do not object, and, "[i]n analyzing a motion to amend the pleadings, this Court may consider exhibits attached to the proposed amendment." Powell v. Corr. Med. Care, Inc., No. 13 Civ. 6842 (WHP), 2014 WL 4229980, at *5 (S.D.N.Y. Aug. 15, 2014). Defendants also attached documentary evidence to one of their filings.

[3] Plaintiff does not provide Sergeant Pierre's, Detective Ward's and Captain Chambers's full names.

[4] Commissioner Schriro and NYDOC Captain Ellis are the only Proposed Defendants who are employees of the NYDOC. All other Proposed Defendants are employees of the NYPD. Docket No. 23-1 ¶¶ 7-23. The fact that the NYPD does not employ NYDOC Captain Ellis is relevant to one aspect of my legal discussion, so I will refer to him as NYDOC Captain Ellis throughout this report and recommendation to emphasize that he, of the officers, does not work for the NYPD.

the claims.

I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes any federal or state conspiracy claims against any Proposed Defendant.

Second, I respectfully recommend that the District Court **grant** Plaintiff's motion for leave to file an amended complaint that includes federal and state claims against Detective Roberts, Sergeant Pierre and Detective Haber, as Defendants consent. <u>Docket Nos. 12, 20</u>.

Third, I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes false-arrest-related and malicious-prosecution-related Section 1983 claims and analog New York State constitutional and tort claims against Detective Daab, Detective Granshaw, Sergeant Mara, NYDOC Captain Ellis, Detective Puleo, Commissioner Schriro, Detective Ward and Captain Chambers. In short, an amended complaint may not name these individuals as Defendants at all.

Fourth, I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes any federal and state claims against Lieutenant Klein based upon his involvement in the October 19, 2012 lineup.

Fifth, I respectfully recommend that the District Court **grant** Plaintiff's motion for leave to file an amended complaint that includes a federal excessive-force-related claim and analog state claims against Lieutenant Klein based upon his involvement in the alleged October 19, 2012 assault.

Sixth, I respectfully recommend that the District Court **grant in part** and **deny in part** Plaintiff's motion for leave to file an amended complaint that includes federal and state due process claims. The only part of Plaintiff's motion to bring due process claims that I recommend

that the District Court **grant** relate to claims which rest upon allegations that Detective Haber and Lieutenant Klein were deliberately indifferent to Plaintiff's medical needs.

Finally, in the event that the District Court accepts my recommendations, I respectfully recommend that the District Court **order** Plaintiff to file a Third Proposed Amended Complaint reflecting the Court's above rulings on ECF within ten days of the publication of the District Court's Order. Once the Third Amended Complaint is filed, Defendants must move to dismiss within ten days before the District Judge, or timely answer.

## I. Factual Background And Procedural History

### a. Procedural History

Plaintiff filed the Original Complaint. Docket No. 1. Defendants answered. Docket No. 7. Plaintiff's Original Complaint named Commissioner Schriro and Detective Roberts as Individual Defendants but did not make specific allegations as to any particular constitutional violations that they committed, giving rise to a motion. Docket No. 1. The Original Complaint also cited John and Jane Doe Defendants. Id.

On the pretrial schedule deadline for requesting leave to amend a pleading or join parties, Plaintiff moved for leave to file a First Proposed Amended Complaint. Docket No. 8; Docket No. 11. Plaintiff's First Proposed Amended Complaint sought to add ten new Proposed Defendants to the action, which, with Commissioner Schriro and Detective Roberts, would bring the total number of Proposed Defendants to twelve. Docket No. 11-1. Plaintiff's allegations were largely the same in the First Proposed Amended Complaint, with some added detail about the events in question. Id.

Two weeks later, Defendants filed an opposition stating that the First Proposed Amended Complaint failed to sufficient allege claims against Commissioner Schriro and eight of the ten

new Proposed Defendants because the pleading merely listed their names in a single sentence.

Docket No. 12. The First Proposed Amended Complaint contained no specific allegations about how any particular Proposed Defendant was involved in any alleged constitutional violation. Id. Plaintiff filed a reply. Docket No. 20.

I held a motion hearing during which the Parties argued their positions. Docket Entry 1/20/2015.

Plaintiff served the Second Proposed Amended Complaint, which document is the subject of Plaintiff's instant motion for leave to amend. Docket No. 23-1. After Plaintiff's submission of the Second Proposed Amended Complaint, the Parties submitted supplemental briefing. Docket Nos. 24, 25.

### b. Plaintiff's Factual Allegations From The Second Proposed Amended Complaint

The following facts are compiled from Plaintiff's Second Proposed Amended Complaint. Docket No. 23-1.

### i. The February 2012 Robbery

On February 22, 2012, an individual named Besiki Svanidize ("Mr. Svanidize") was robbed ("the February 2012 robbery") when, after advertising on Craigslist that he had an iPhone for sale, he traveled to meet a potential buyer and was robbed of the iPhone at gunpoint. Docket No. 23-1 ¶¶ 27-33; Docket No. 20-3. An individual named Koba Koberidze ("Mr. Koberidze") witnessed the February 2012 robbery. Docket No. 23-1 ¶ 29.

### ii. Detective Haber Leads An Investigation Of The February 2012 Robbery, And Detective Daab And Detective Granshaw Present A Photograph Array That Includes Plaintiff's Photograph To Mr. Svanidize And Mr. Koberidze, Who Fail To Identify Plaintiff As the February 2012 Robber

Plaintiff alleges that Detective Haber was in charge of investigating the February 2012

robbery.  Id. ¶¶ 34, 38.  Plaintiff also alleges that Detective Daab and Detective Granshaw assisted Detective Haber with a related photograph array presented to Mr. Svanidize and Mr. Koberidze on Februray 22, 2012.  Id.

According to Plaintiff, Detective Daab wanted to frame Plaintiff as the perpetrator of the February 2012 robbery.  Id. ¶ 34.  Plaintiff does not state how Detective Daab knew of Plaintiff prior to the investigation or why Detective Daab wanted to frame him.

On the day of the February 2012 robbery, Detective Daab, with the assistance of Detective Granshaw, placed Plaintiff's photograph in a six-person photograph array and presented the photograph array to Mr. Svanidize and Mr. Koberidze.  Id. ¶¶ 35-40, 44.  Detective Daab and Detective Granshaw asked Mr. Svanidize and Mr. Koberidze whether either of them recognized any of the pictured individuals as the perpetrator of the robbery earlier that day.  Id. ¶¶ 36-40.

According to Plaintiff, Mr. Svanidize and Mr. Koberidze failed to identify Plaintiff as the perpetrator of the February 2012 robbery.  Id. ¶¶ 38-43.  Mr. Koberidze stated that although one of the people in the photographs looked like the perpetrator, he was not sure and did not want to identify that person for fear of getting "the wrong guy in trouble."  Id. ¶ 40; Docket No. 20-2.

Detective Daab and Detective Granshaw also interviewed Mr. Svanidize and Mr. Koberidze regarding the details of the crime and learned the telephone number of the individual who invited Mr. Svanidize and Mr. Koberidze to the address where the crime occurred ("the alleged perpetrator's telephone number").  Docket No. 20-5.  Detective Daab and Detective Granshaw wrote reports reflecting that information and the results of the photograph array. Docket Nos. 20-5.

Plaintiff admits in a filing relating to this motion to amend that, on February 25, 2012,

Defendants learned that in 2008, Plaintiff gave police a telephone number as his home telephone number that matched the alleged perpetrator's telephone number.  Docket No. 25 at 1 n.1. Plaintiff emphasizes, however, that other individuals had also provided the alleged perpetrator's telephone number to police as their own since 2008 as well.  Docket No. 25 at 1 n.1.

<div style="text-align:center"></div>

      **iii. After Sergeant Mara Read Detective Daab's And Detective Granshaw's Investigative Reports, He Issued An I-card For Plaintiff's Arrest For The February 2012 Robbery On The Basis Of Detective Haber's Allegedly False Statement On February 29, 2012 That He Conducted A Second Photo Array At Which Mr. Koberidze Identified Plaintiff As The February 2012 Robber**

On February 25, 2012, Sergeant Mara, who supervised Detective Haber, Detective Daab and Detective Granshaw, approved Detective Daab's and Detective Granshaw's reports.  Id.; Docket No. 23-1 ¶¶ 54-55.  As a result, Plaintiff alleges that Sergeant Mara knew or should have known of their contents as of that date.  Id.

Plaintiff alleges that, on February 29, 2012, Detective Haber falsely stated that he conducted a second photograph array with Mr. Koberidze and that Detective Haber "falsely stated that Mr. Kob[eridze] had identified "[P]laintiff to him as the perpetrator of the [February 2012] robbery."  Id. ¶ 48.  Plaintiff alleges that, in fact, "[a]t all times material, [Detective] Haber did not conduct any identification procedure."  Id.  Plaintiff does not provide any information to support these conclusory statements.

Plaintiff alleges that regardless of Detective Haber's statement that Mr. Koberidze identified Plaintiff as the robber on February 29, 2012, Sergeant Mara knew or should have known from his February 25, 2012 review of Detective Daab's and Detective Granshaw's investigative reports that that could not be possible.  Id. ¶ 54.  Instead, at least partially on the basis of the February 29, 2012 photograph array results, Sergeant Mara found probable cause and issued an I-card authorizing Plaintiff's arrest for the February 2012 robbery.  Id. ¶ 56; Docket

### iv. NYDOC Captain Ellis And Detective Puleo Place A Hold Order On Plaintiff As He Is About To Be Released From A Detention Facility, And Immediately After Plaintiff Finished Serving His Sentence, NYDOC Captain Ellis, Sergeant Pierre And Detective Roberts Re-Arrest Plaintiff While He Is In A Line Waiting To Obtain A Metro Card

On April 7, 2012, Plaintiff was in the custody of NYDOC, serving a five-day sentence for unlawful possession of marijuana unrelated to the February 2012 robbery. Docket No. 23-1 ¶ 57. According to Plaintiff, on or around that date, Detective Puleo directed NYDOC Captain Ellis to place a hold on Plaintiff so that the detention facility would keep Plaintiff incarcerated beyond his five-day sentence (hereinafter the "hold order"). Id. ¶¶ 57-58. Plaintiff claims that NYDOC has a policy of "detaining sentenced prisoners beyond the timeline mandated by a competent court or lawful order," and that Commissioner Schriro "established, authorized, approved, enabled and facilitated" that "unlawful" NYDOC policy and practice. Id. ¶ 61.

Plaintiff alleges that, on April 9, 2012, "immediately after he had finished serving his [five-day] sentence," NYDOC Captain Ellis, Sergeant Pierre, Detective Roberts and four unknown officers re-arrested Plaintiff as he waited in a line to receive a Metro card before leaving the facility. Id. ¶¶ 62-64; Docket No. 20-12. According to Plaintiff, Sergeant Pierre, Detective Roberts and an unknown officer "physically and verbally assaulted" him while

---

[5] I note that Plaintiff argues that Defendants (it is not clear which Defendants) can be found liable for malicious prosecution because an ADA filed a notice to a New York court on May 21, 2012 that they would provide evidence in Plaintiff's prosecution that Mr. Koberidze identified him in a February 22, 2012 photo array as the February 2012 robber. Docket No. 20-7. Plaintiff's point is that this is incorrect insofar as Mr. Koberidze identified Plaintiff, if at all, during a February 29, 2012 photo array. Id. The ADA in question is not a part of this action, and Plaintiff does not allege that the February 22, 2012 result was ever fabricated, only that the February 29, 2012 photo array result was fabricated. As a result, I believe that the ADA's communication to the court, viewed in the context of Plaintiff's allegations, does not explicitly or implicitly allege wrongdoing by any Proposed Defendant regarding the February 22, 2012 photo array result.

transporting him to the 105th Precinct.  Id. ¶64.

Plaintiff does not expressly allege that he was arrested for the February 2012 robbery, but surrounding allegations, such as the outstanding I-card for his arrest for the February 2012 robbery and Plaintiff's arraignment for the February 2012 robbery the day after his arrest, imply that that was the case.  Id. ¶¶ 56, 77-79.

### v. Detective Roberts Places Plaintiff In A Lineup (Under The Supervision Of Lieutenant Klein And With The Assistance Of Detective Ward), But Mr. Sue Is Unable To Identify Plaintiff As The Perpetrator Of The January 2012 Robbery

According to Plaintiff, upon his arrival at the precinct, Detective Roberts decided to frame Plaintiff for another robbery, with the help of Detective Ward and Lieutenant Klein.  Id. ¶ 65.  An individual named Fidel Sue ("Mr. Sue") was the victim of a second robbery, which had taken place on January 25, 2012 ("the January 2012 robbery").  Id. ¶¶ 25-27.  Detective Roberts placed Plaintiff in a lineup.  Id. ¶ 65.  Lieutenant Klein supervised the lineup, and Detective Ward assisted.  Id. ¶ 69.

Mr. Sue failed to identify Plaintiff as the perpetrator of the January 2012 robbery.  Id. ¶¶ 70-71.

### vi. Plaintiff Is Charged With The February 2012 Robbery And Arraigned But, After Mr. Svanidize Is Unable To Identify Plaintiff In A Lineup Many Months Later, The Charges Are Dismissed, And Plaintiff Is Released From Custody

After the lineup, Plaintiff was taken to Central Booking, charged with the February 2012 robbery and arraigned.  Id. ¶ 73.  As Plaintiff was unable to make the $75,000.00 bail, Plaintiff was incarcerated at Rikers Island during the pendency of the criminal prosecution against him for the February 2012 robbery, for approximately seven months.  Id. ¶¶ 76-81.

On or around October 19, 2012, Defendant Haber, working under the supervision of

Lieutenant Klein, placed Plaintiff in another lineup before Mr. Svanidize.[6]  Id. ¶¶ 81-83.

Plaintiff alleges that Mr. Svanidize did not identify Plaintiff as the perpetrator of the February

2012 robbery.  Id. ¶ 82.  According to Plaintiff, police officers "involved in the lineup physically

and verbally assaulted" him; among other things, the police officers allegedly placed Plaintiff in

a chokehold.  Id. ¶¶ 84-90.  Plaintiff alleges that he requested to be taken to the hospital to

receive medical care for his injuries, but that the same police officers who had assaulted him

denied his request.  Id. ¶¶ 91-92.

On November 13, 2012, all charges against Plaintiff were dismissed, and Plaintiff was

released after spending seven months in custody at Rikers Island.  Id. ¶¶ 94-95.

## II.  Legal Standard

Under FRCP 15(a), when a party cannot amend its pleading as a matter of course, "a

party may amend its pleading only with the opposing party's written consent or the court's leave.

The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "This

permissive standard is consistent with our strong preference for resolving disputes on the

merits."  Williams v. Citigroup, Inc., 659 F.3d 208, 212-13 (2d Cir. 2011).  In addition,

In determining whether to grant leave to amend, the Court must accept the moving

party's non-conclusory factual pleadings and draw all reasonable inferences in that party's favor,

"to determine whether the allegations plausibly give rise to an entitlement to relief."  Panther

Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012).  "[M]otions to amend

should generally be denied in instances of futility, undue delay, bad faith or dilatory motive,

repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to

---

[6] Plaintiff's Second Proposed Amended Complaint does not state the date of this incident, but his motion to amend states that it was on or around October 19, 2012.  Docket No. 11 at 2 n.3.  I will use this date for the purposes of this motion.

the non-moving party." Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir.

2008); see Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 71 (2d Cir. 2012)

("[A] request to replead should be denied in the event that amendment would be futile.").  A

motion to amend will be considered futile if the Court determines, "as a matter of law, that

proposed amendments would fail to cure prior deficiencies or to state a claim under Rule

12(b)(6) of the Federal Rules of Civil Procedure."  Panther Partners, 681 F.3d at 119; see Doyle

v. United Airlines, Inc., 914 F. Supp. 2d 325, 333 (E.D.N.Y. 2012) (same).[7]

### III. Analysis

As a preliminary matter, I note that Defendants only oppose Plaintiff's motion to amend

on the basis of the futility of adding certain Defendants.  Docket Nos. 12, 24.  Defendants do not

raise any other objection.  Id.

### a. Plaintiff's Motion To Include Federal Or State Conspiracy Claims In An Amended Complaint Should Be Denied Under The Intra-Corporate Conspiracy Doctrine

Before I conduct any analysis relating to a specific Proposed Defendant, I respectfully

recommend that the District Court **deny** Plaintiff's motion for leave to include any federal or

state conspiracy claims in an amended complaint, as they are futile.  Plaintiff's Second Proposed

Amended Complaint alleges conspiracy claims against unidentified "individual officers" relative

to Plaintiff's false arrest, failure to intervene and unreasonable detention claims.  Docket No. 23-

---

[7] Plaintiff also seeks to add the Proposed Defendants under FRCP 20(a)(2), which provides that "[p]ersons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . and . . . any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  For the reasons stated in this report and recommendation, the Proposed Defendants would not properly be added under FRCP 20(a)(2).  Courts have held that "while these various rules regulate" a motion to amend, "there is in practical terms little difference between them."  Franco v. Ideal Mortg. Bankers, Ltd., No. 07 Civ. 3956 (JS) (AKT), 2009 WL 3150320, at *3 n.3 (E.D.N.Y. Sept. 28, 2009).

1 ¶¶ 99-102.

The intra-corporate conspiracy doctrine provides that defendants working for the same employer are "legally incapable of conspiring together" when the offending conduct occurred within the scope of their employment.  Little v. City of N.Y., 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (granting summary judgment to two police officers accused of conspiring with one another under 42 U.S.C. §§ 1983 & 1985); see Christians of California, Inc. v. Clive Christian N.Y., LLP, 2015 WL 468833, at *9 (S.D.N.Y. Feb. 3, 2015) ("District courts in this Circuit have . . . applied the intra-corporate conspiracy doctrine to state law conspiracy claims on numerous occasions.") (citing Broich v. Inc. Vill. of Southhampton, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009)).  Here, all Individual Defendants work for the New York Police Department (with the exception of NYDOC Captain Ellis) and, as such, are employees of the single municipal corporation New York City.  See DeJesus v. City of N.Y., -- F. Supp. 3d --, No. 13 Civ. 8366 (JPO), 2014 WL 5454692, at *5  (S.D.N.Y. Oct. 28, 2014) (stating that because all of the individual defendants are NYDOC employees, they cannot conspire within the meaning of 42 U.S.C. § 1985); Little, 487 F. Supp. 2d at 441-42 (holding that police officers cannot conspire with one another); Danielak v. City of N.Y., No. 02 Civ. 2349 (KAM), 2005 WL 2347095, at *13-14 (E.D.N.Y. Sept. 26, 2005) ("[T]he intra-corporate conspiracy doctrine bars [the] plaintiff's conspiracy claims because all of the individual defendants were employees of the New York City Police Department, and were acting within the scope of their employment as police officers when they arrested [the] plaintiff."); Pedone v. City of N.Y., No. 05 Civ. 1629 (CPS), 2005 WL 2290357, at *1 (E.D.N.Y. Sept. 20, 2005) (stating that the City of New York is a municipal corporation acting through, among others, its NYDOC officers and other employees). The intra-corporate conspiracy doctrine applies to bar federal and state conspiracy claims

asserted against NYDOC Captain Ellis and NYPD Detective Puleo as well, because although they work for different departments, the City is their employer. See Vlahadamis v. Kiernan, 837 F. Supp. 2d 131, 157 (E.D.N.Y. 2011) ("Here, all of the individual defendants are employees of the same entity: the Town of Southhampton. It matters not that they hail from different departments within the Town's governing structure; they are still covered by the doctrine and therefore any claims that they conspired amongst themselves necessarily fails."); McEvoy v. Spencer, 49 F. Supp. 2d 224, 226 (S.D.N.Y. 1999) (stating that for the purposes of the intra-corporate conspiracy doctrine, it is "of no more moment" that the defendants worked in different departments of the City "than it would be if the individual defendants "worked for the Mainframe and Personnel Divisions of IBM").

Assuming, arguendo, that Plaintiff's conspiracy claims could survive the intra-corporate conspiracy doctrine problem, Plaintiff's conspiracy claims would still fail. To make out a conspiracy claim, a plaintiff must establish the occurrence of an underlying tort, plus "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Fisk v. Letterman, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (considering the plaintiffs' malicious-prosecution conspiracy claim).

I must make a few preliminary observations as I begin my analysis. First, I note that Plaintiff has made his false arrest and unreasonable detention conspiracy claim against unnamed "individual officers," which I take to mean that Plaintiff is accusing every single officer Defendant in this action of conspiracy. Docket No. 23-1 ¶¶ 99-102. I also note that Plaintiff does not specify which groups of Defendants he believes conspired together, which I take to mean that Plaintiff alleges that all individual officer Defendants were part of the same

conspiracy.  Id.

Looking past that initial vagueness, Plaintiff has not adequately pleaded that all officer Defendants had an agreement.  In Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003), the Second Circuit held that a plaintiff seeking to make out a conspiracy claim must have "some factual basis supporting a meeting of the minds."  The factual basis need not be direct evidence—a plaintiff may also meet this burden by alleging "facts upon which it may be plausibly inferred that the defendants came to an agreement to violate his constitutional rights." Green v. McLaughlin, 480 F. App'x 44, 46 (2d Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009)); see Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (finding conspiracy allegations "baseless" where the plaintiff did not offer "a single fact to corroborate her allegation of a 'meeting of the minds' among the [alleged] conspirators").

Here, insofar as Plaintiff's Second Proposed Amended Complaint does not point to any facts supporting the allegation that the individual officer Defendants made an agreement to falsely arrest and unreasonably detain him, Plaintiff's conspiracy theory appears to be that a fact finder could reasonably infer that Defendants so agreed.  Docket No. 23-1.  I fail to see how a fact finder could reasonably make such an inference about an agreement from Plaintiff's Second Proposed Amended Complaint.

For example, Plaintiff has alleged that Detective Haber falsely stated that Mr. Koberidze identified Plaintiff as the perpetrator during a February 29, 2012 photograph array.  Id. ¶¶ 48-52. However, Plaintiff does not allege facts that would plausibly support a finding that Detective Daab, Detective Granshaw, Sergeant Mara or any other Defendant agreed to frame Plaintiff with use of the false statement.  Id. ¶¶ 48-52.  Although Plaintiff makes the unsupported allegation that Detectives Daab and Haber wanted to frame Plaintiff, that allegation at best shows a

coincidence, not agreement. The allegations do not permit a reasonable inference that Detective Daab and Detective Haber ever agreed that they would work together toward a collective goal of violating Plaintiff's rights. See Ciambrello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.") (citing Dwared v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1995). Plaintiff also alleges that Sergeant Mara should have known that Detective Haber's statement was false, but that argument imputes negligence, not agreement. Id. ¶¶ 54-60; De Ratafia v. Cnty. of Columbia, No. 13 Civ. 174 (NAM) (RFT), 2013 WL 5423871, at 15 (N.D.N.Y. Sept. 25, 2013) (stating that plaintiffs' allegation "that [a defendant] instigated the invasion of their home by providing false information to [other] defendant[s], they offer no evidence of a conspiracy").

The rest of Plaintiff's Second Proposed Amended Complaint suffers from the same problem—Plaintiff would have the Court infer that two people who commit a tort at the same time must have entered into an agreement to so act. Plaintiff alleges that Detective Puleo asked NYDOC Captain Ellis to place a hold on Plaintiff's release from a correctional facility due to the I-card for Plaintiff's arrest, and that NYDOC Captain Ellis entered the hold into the computer system, id. ¶¶ 56-60; that various individual Defendants re-arrested Plaintiff once he was released from the correctional facility, id. ¶¶ 62-63; and that Detective Roberts and Sergeant Pierre both punched Plaintiff, id. ¶ 64. See Concepción v. City of N.Y., No. 05 Civ. 8501 (RJS), 2008 WL 2020363, at *8 (S.D.N.Y. May 7, 2008) (stating that the plaintiff had not adequately pleaded conspiracy against defendants who collectively worked on security and had conversation

regarding the "control of visible dissent" because those allegations "do[] not support a plausible claim that [the defendants] reached an <u>agreement</u> with any other individual or entity, let alone an agreement to violate [the] plaintiff's civil rights") (emphasis in original); <u>Williams v. N.Y.C. Hous. Auth.</u>, No. 05 Civ. 2750 (DC), 2007 WL 4215876, at *6 (S.D.N.Y. Nov. 30, 2007) (declining to infer that a defendant agreed to a conspiracy when he witnessed two parties sign a memorandum which enacted a policy which allegedly violated the plaintiff's civil rights); <u>Rzayeva v. U.S.</u>, 492 F. Supp. 2d 60, 92 (D. Conn. 2007) ("Although [the p]laintiffs generally assert that [the group of defendants conspired] to deprive [the p]laintiffs of their civil rights . . . , they allege no facts to establish an agreement to inflict a particular unconstitutional injury upon them.").

In light of the foregoing, I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint containing federal or state conspiracy claims.

> **b.** **Plaintiff's Motion To Include Detective Roberts, Sergeant Pierre And Detective Haber As Defendants In An Amended Complaint Should Be Granted**

In light of Defendants' consent to the inclusion of Detective Roberts (already a Defendant in the Original Complaint), Sergeant Pierre and Detective Haber in an amended complaint, and upon my own review of the Second Proposed Amended Complaint and the Parties' filings, I respectfully recommend that the District Court **grant** Plaintiff's motion for leave to add them as Defendants in an amended complaint except as to the conspiracy and due process claims just described.  <u>Docket Nos. 12, 24</u>.

> **c.** **Plaintiff's Motion To File An Amended Complaint Adding Defendants To Its Federal Claims Should Be Granted In Part And Denied In Part**

> > **i.** **Plaintiff's Federal Claims, Generally**

Plaintiff brings three federal constitutional claims pursuant to 42 U.S.C. § 1983 that are

relevant to this motion to amend. "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). "To succeed on a § 1983 claim, a plaintiff must show that the defendants, acting under the color of state law, deprived him or her of a constitutional right." Rodriguez v. Phillips, 66 F.3d 470, 473 (2d Cir. 1995). A plaintiff bringing a Section 1983 constitutional tort in this District must allege facts that satisfy the elements of the New York tort counterpart. See Russo v. City of Bridgeport, 479 F.3d 196, 204 (2d Cir. 2007). "[S]ave for the requirement that the [Section 1983] constitutional tort be under color of state law, both torts are 'substantially the same.'" Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991).

### ii. Legal Standards Pertaining To Plaintiff's False-Arrest-Related Claim, Excessive-Force-Related Claim And Malicious-Prosecution-Related Claim

Plaintiff groups various theories of liability within each one of his three Section 1983 claims relevant to this motion. In the discussion of the applicable legal standards that follows, I review Plaintiff's three groupings of Section 1983 claims according to the same structure.

#### 1. False Arrest, Unreasonable Detention, Failure To Intervene

Plaintiff seeks to bring his first Section 1983 claim for false arrest, unreasonable detention and failure to intervene (collectively referred to as "the false-arrest-related claim") against all individual officers. Docket No. 23-1 ¶¶ 99-102.[8]

_____

[8] It should be noted that Plaintiff's Second Proposed Amended Complaint's false arrest and false imprisonment claims are brought against "individual officers," with no mention of Commissioner Schriro. Docket No. 23-1 ¶¶ 99-102. In fact, Plaintiff pleaded only New York State constitutional causes of action against Commissioner Schriro, as he brings these against all "Defendants." Id. ¶¶ 136-140. The rest of Plaintiff's causes of action are brought against "officer defendants" (first and sixth), "NYPD officers" (second and third) and "Defendant City of New York" (fourth and seventh). Id. ¶¶ 99-135, 141-148. I will assume for the sake of

A false arrest claim is meant to address the unreasonable seizure of a person under the Fourth Amendment. To make out such a claim, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claim. See Jaegly v. Couch, 439 F.3d 149, 151-52 (2d Cir. 2006). "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of N.Y., 331 F.3d 63, 75 (2d Cir. 2003) (citations omitted). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Simons v. N.Y., 472 F. Supp. 2d 253, 261-62 (N.D.N.Y. 2007) (citations omitted). "The existence of probable cause to arrest is a complete defense to a claim of false arrest; or, in other words, it renders the confinement privileged." Id. (citing Bernard v. U.S., 25 F.3d 98, 102 (2d Cir. 1994).

"The Second Circuit has found that an unreasonable [detention] claim may arise where a police officer fails 'to investigate specific, readily-verifiable claims of innocence [made by a detained arrestee] in a reasonable period of time." Harewood v. Braithwaite, -- F. Supp. 3d --, No. 09 Civ. 2874 (PKC) (RML), 2014 WL 6867942, at *12 (E.D.N.Y. Dec. 5, 2014) (citing Russo v. City of Bridgeport, 479 F.3d at 196, 209 (2d Cir. 2007)). "To prevail on a claim of excessive detention (or 'Russo claim'), a plaintiff must demonstrate '(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and

---

argument that Plaintiff properly pleaded Commissioner Schriro as a Defendant here, but the claim is futile for the reasons discussed.

(3) that the officers' conduct 'shocks the conscience.'" <u>Harewood</u>, 2014 WL 6867942, at *12.

"The relevant factors to consider in determining whether a plaintiff's Fourth Amendment right to be free from excessive detention was violated are: (1) the length of time the plaintiff was incarcerated; (2) the ease with which the exculpatory evidence in the defendant officers' possession could have been checked; and (3) the alleged intentionality of the defendants' behavior." <u>Id.</u> Stated somewhat differently, "[t]he touchstone of an unreasonable detention claim is the existence of egregious conduct by an officer in connection with specific, readily-accessible exculpatory evidence." <u>Id.</u>

As to Plaintiff's argument that officers other than these who arrested or detained him may be liable for his allegedly false arrest or directly, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." <u>Terebesi v. Torreso</u>, 764 F.3d 217, 243 (2d Cir. 2014) (citation omitted). A plaintiff bringing a failure to intervene claim against an officer must allege (1) that a constitutional violation occurred and, if so, that (2) the officer had a realistic opportunity to intervene and prevent the harm; (3) a reasonable person in the officer's position would have known that the victim's constitutional rights were being violated; and (4) the officer did not take reasonable steps to intervene. <u>See Jean-Laurent v. Wilkinson</u>, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11-12 (2d Cir. 1988)); <u>Jackson v. City of N.Y.</u>, 939 F. Supp. 2d 235, 258 (E.D.N.Y. 2013) (granting the defendants' motion for summary judgment on the plaintiff's failure-to-intervene claim against a sergeant defendant relating to other defendant officers' use of excessive force against the plaintiff because the sergeant had not yet arrived on the scene when the excessive force occurred). "Mere inattention or inadvertence, it should be noted, does not

rise to a level of deliberate indifference [to taking reasonable steps to intervene] sufficient to support liability for failure to intervene." Cicio v. Lamora, No. 08 Civ. 431 (GLS) (DEP), 2010 WL 1063875, at *8 (Feb. 24, 2010), report & recommendation adopted by 2010 WL 1063864 (N.D.N.Y. Mar. 22, 2010).

When a failure to intervene claim implicates a supervisor, it is important to remember that "vicarious liability is inapplicable to . . . § 1983 suits" such that "the plaintiff in such a suit . . . must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 677. The Second Circuit has stated that

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifferent to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014).

### 2. Excessive Use Of Force, First Amendment Retaliation, Deliberate Indifference To An Inmate's Serious Medical Needs, Cruel And Unusual Punishment

Plaintiff's second Section 1983 claim is brought against Detective Roberts, Sergeant Pierre, Detective Haber and Lieutenant Klein and groups together Plaintiff's First-Amendment retaliation, excessive force, deliberate indifference to an inmate's serious medical needs, and cruel and unusual punishment claims (collectively referred to as "the excessive-force-related claim"). Docket No. 23-1 ¶¶ 103-106.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).

"For [a] jury to convict [a defendant] of violation [a plaintiff's] right to be free from excessive force, [the jury must] find that [the defendant]: (1) acted under color of law; (2) used excessive force . . . ; (3) acted willfully; and (4) caused bodily injury." U.S. v. Cote, 544 F.3d 88, 99 (2d Cir. 2008). In determining whether an officer used "excessive force," a pretrial detainee plaintiff must show "only that the force [that an officer] purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, -- S. Ct. --, 2015 WL 2473447, at *5 (June 22, 2015).

Plaintiff alleges a claim as to his medical treatment in custody. A consideration specific to a cruel and unusual punishment and deliberate indifference claims under the Eighth Amendment deals with whether the plaintiff had been convicted of a crime at the moment of the alleged punishment or deliberate indifference. "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilty in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Ingraham v. Wright, 430 U.S. 651, 671 (1977); see Tagliaferi v. Doe, No. 09 Civ. 1592 (WWE), 2012 WL 1957284, at *4 (D. Conn. 2012) ("[I]n context of deliberate indifference to the medical needs of a state pretrial detainee, the Due Process Clause of the Fourteenth Amendment 'requires no more' than the Eighth Amendment would in the case of a convicted prisoner.") (citation omitted); Smith v. Ortiz, No. 01 Civ. 5848 (DAB), 2006 WL

1458404, at *5 (S.D.N.Y. May 25, 2006) ("A plaintiff may state a claim under the Eighth

Amendment [for cruel and unusual punishment] only if he or she has been adjudged guilty by a

criminal proceeding at the time of the events giving rise to the Eighth Amendment claim.").

Accordingly, the Court may look to Eighth Amendment and Fourteenth Amendment cases to

assess this claim.  see Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for

deliberate indifference to a serious medical condition or other serious threat to the health or

safety of a person in custody should be analyzed under the same standard irrespective of whether

they are brought under the Eighth or Fourteenth Amendment.").

There are two elements to a claim alleging deliberate indifference to an inmate's serious

medical needs, one of which is objective and one of which is subjective.  See Smith v. Carpenter,

316 F.3d 178, 184 (2d Cir. 2003).  "The objective 'medical need' element measures the severity

of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the

defendant [] official acted with a sufficiently culpable state of mind."  Id. at 183-84 (citing

Estelle v. Gamble, 429 U.S. 96, 104 (1976)).  Not every lapse in medical care will meet this

standard, which is "not a vehicle for bringing medical malpractice claims."  Smith, 316 F.3d at

184.  "[A] prisoner must first make [a] threshold showing of serious illness or injury in order to

state [a] claim for denial of medical care," and next "more than an inadvertent failure to provide

adequate medical care."  Id. (quotation & citation omitted).

"To the extent [that a] plaintiff's cruel and unusual punishment claim is one for deliberate

indifference," it "should be analyzed under the same standard" as a deliberate indifference claim.

Carrillos v. Inc. Vill. of Hempstead, -- F. Supp. 3d --, No. 11 Civ. 5775 (JFB) (SIL), 2015 WL

728244, at *14 (E.D.N.Y. Feb. 20, 2015); see Nelson v. Plumley, No. 12 Civ. 422 (TJM) (DEP),

2013 WL 1121362, at *9 (N.D.N.Y. Jan. 24, 2013) ("Generally, claims that the conditions of an

inmate's confinement violate his Eighth Amendment right to be free of cruel and unusual

punishment are analyzed using the same objective and subjective tests as those used for a

deliberate indifference to a serious medical need claim[.]").

### 3. Fabrication Of Evidence, Denial Of Right To A Fair Trial, Malicious Prosecution

Plaintiff's third Section 1983 claim brings together Plaintiff's fabrication of evidence,

denial of right to a fair trial and malicious prosecution (collectively referred to as "the malicious-

prosecution-related claim") against all NYPD officers. Docket No. 23-1 ¶¶ 107-110.

"[A] person suffers a constitutional violation [of his right to a fair trial] if an (i)

investigating official (ii) fabricates evidence (iii) that is likely to influence a jury's decision, (iv)

forwards that information to prosecutors, and (v) the plaintiff suffers a deprivation of liberty as a

result." Rucks v. City of N.Y., -- F. Supp. 3d --, 2015 WL 1433383, at *8 (S.D.N.Y. Mar. 30,

2015) (citing Jovanovic v. City of N.Y., 486 F. App'x 149, 152 (2d Cir. 2012)).

The elements of a fabrication-of-evidence claim and denial-of-right-to-a-fair-trial claim

overlap. In Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003), the Second Circuit explained

that when "a police officer creates false information likely to influence a jury's decision and

forwards that information to prosecutors, he violates the accused's right to a fair trial, and the

harm occasioned by such an unconscionable action is redressable in an action for damages under

42 U.S.C. § 1983." In order for a plaintiff to recover, the alleged fabrication must be material,

i.e., "likely to influence a jury's decision," Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 127

(2d Cir. 1997), and the plaintiff's post-arraignment deprivation of liberty was the "legally

cognizable result of [the officer's] alleged misconduct in fabricating evidence," Zahrey v.

Coffey, 221 F.3d 342, at 354 (2d Cir. 2000). A denial-of-fair-trial claim "is available even

where a trial does not actually take place." Rucks, 2015 WL 1433383, at *8. For example, in

Ricciuti, the Second Circuit reversed a district court's dismissal of a plaintiff's fair-trial claim even though the charges against the plaintiff were dropped before a trial was held, stating that an officer's fabricated evidence, when it is "almost certain to influence a jury's verdict," "works an unacceptable corruption of the truth-seeking function of the trial process." Ricciuti, 124 F.3d at 130; see Soto v. City of N.Y., No. 12 Civ. 6911 (RA), 2015 WL 3422155, at *4 (S.D.N.Y. May, 28, 2015) (permitting the plaintiffs to add a fair-trial claim on behalf of one of the plaintiffs who "did not proceed to trial on the charges that were ultimately dismissed"); Douglas v. City of N.Y., 595 F. Supp. 2d 333, 346 (S.D.N.Y. 2009) (denying the defendants' summary judgment motion on the plaintiff's fair trial claim because, although the defendants' motion argued that the plaintiff's charges were dismissed before a trial, Ricciuti "permitted a claim under § 1983 for violation of the right to a fair trial to proceed even where no trial took place"); Keller v. Sobolewski, No. 10 Civ. 5198 (FB) (RML), 2012 WL 4863228, at *4 (E.D.N.Y. Oct. 12, 2012) (rejecting the defendants argument that "a deprivation of fair trial claim requires either a conviction or trial").

For the Section 1983 claim, "[t]he elements of a malicious prosecution claim in New York are: (1) the defendant initiated a prosecution against the plaintiff, (2) the defendant lacked probable cause to believe the proceeding could succeed, (3) the defendant acted with malice, and (4) the prosecution was terminated in the plaintiff's favor." Negron v. Wesolowski, 536 F. App'x 151, 153 (2d Cir. 2013) (citing Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000)).

### iii. Plaintiff's Motion For Leave To File An Amended Complaint That Includes Detective Daab, Detective Granshaw And Sergeant Mara As Defendants Should Be Denied

#### 1. Plaintiff's Motion For Leave To File An Amended Complaint That Includes NYPD Detective Daab And NYPD Detective Granshaw As Defendants Should Be Denied

Plaintiff's allegations about Detective Daab and Detective Granshaw do not plausibly support the false-arrest-related claim or the malicious-prosecution-related claim against them. Docket No. 23-1 ¶¶ 34-46. This is because the Second Proposed Amended Complaint alleges that Detective Daab and Detective Granshaw conducted the first photograph array, pursuant to which there was no identification of Plaintiff, and then they drop out of the narrative. Plaintiff thus does not allege that they committed any violation.

Here, Plaintiff "has not alleged facts that plausibly support that [Detective Daab or Detective Cranshaw] had a realistic opportunity to intervene and protect [P]laintiff from [Detective Haber's] conduct." Wellington v. Langendorf, 2013 WL 3753978, at *10 (N.D.N.Y. July 15, 2013) (dismissing the plaintiff's claim of failure to intervene); see Cicio, 2010 WL 1063875, at *8 n.6 (dismissing on summary judgment the plaintiff's failure to intervene claim against the defendant superintendent of a correctional facility because his "lack of personal involvement in the constitutional violation" meant that the knowledge element of a failure to intervene claim had not been established).

For example, Plaintiff alleges that Detective Daab and Detective Granshaw conducted the first photograph array. Docket No. 23-1 ¶¶ 34-56. Plaintiff does not allege that Detective Daab and Detective Granshaw actually knew about Detective Haber's later alleged fabrication or that they should have known because they had a duty to monitor Sergeant Mara or Detective Haber's subsequent work on the case. Id. In fact, Plaintiff's Second Proposed Amended Complaint

paints Detective Daab and Detective Granshaw as Sergeant Mara's subordinates and Detective

Haber's assistants (on February 22, 2012, at least) such that it would not be reasonable to infer

that they had any duty to monitor or that they were even likely to be aware of Sergeant Mara or

Detective Haber's work.

In Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014), cited by Plaintiff as requiring

that the question of Detective Daab and Detective Granshaw's reasonable opportunity to

intervene should go to a jury, the Second Circuit stated that that was not true when, "considering

all the evidence, a reasonable jury could not possibly conclude otherwise." (quotation & citation

omitted). Docket No. 11. Plaintiff string cites to various failure-to-intervene cases without

discussion, but none of these cases is relevant. In Vincent v. Yelich, 718 F.3d 157, 173 (2d Cir.

2013), the Second Circuit stated that "[a] supervisory official may be liable in an action brought

under § 1983 if he . . . fail[ed] to act on information indicating that unconstitutional acts were

occurring." (quotation & citation omitted). Here, Plaintiff's allegations do not allege that

Detective Daab and Detective Granshaw were Detective Haber's supervisors, but rather, Plaintiff

alleges that they assisted him on February 22, 2012. Docket No. 23-1 ¶¶ 34, 44. Plaintiff also

cites Vazquez v. City of N.Y., No. 10 Civ. 6277 (JMF), 2014 WL 4388497, at (S.D.N.Y. Sept. 5,

2014), in which the Southern District of New York denied the defendants' summary judgment

argument that the defendants were not personally involved in each alleged constitutional

violation because they "were the lead detectives in the two homicides and closely collaborated

throughout the investigations." Again, Plaintiff's allegations are not analogous because

Detective Daab or Detective Granshaw were not the lead detectives, and they did not "closely

collaborate[]" with Detective Haber throughout the investigation. Instead, after the February 22,

2012 photograph array, Detective Daab and Detective Granshaw disappear from Plaintiff's

narrative altogether.  Finally, <u>Brown v. City of N.Y.</u>, No. 08 Civ. 5095 (FB) (MDG), 2013 WL

1338785, at *6 (E.D.N.Y. Apr. 1, 2013), cited by Plaintiff, is inapposite as to Detective Daab and

Detective Granshaw's situation.  In <u>Brown</u>, also cited by Plaintiff, this Court declined to dismiss

the plaintiff's claims on summary judgment when the failure-to-intervene defendant was present

during the incident in question and, as a result, "[a] reasonable jury could find that [the

defendant] personally saw the incident, knew that [the officer defendant accused of committing

false arrest and malicious prosecution] was lying, and yet failed to intervene." <u>Id.</u>  Stated

bluntly, Plaintiff's allegations are nothing like the facts in <u>Brown</u>.

       Plaintiff's Second Proposed Amended Complaint alleges that Detective Daab and

Detective Granshaw selected Plaintiff as a suspect and placed him in the array without cause.

<u>Docket No. 23-1</u> ¶¶ 34-37, 44.  Plaintiff originally argued that the placement of his photograph

as a suspect in the photograph array violated his constitutional rights, <u>Docket No. 20</u> at 6,

although he later withdrew this argument, <u>Docket No. 25</u>.  I will discuss the issue briefly for

completeness.

       Here, Plaintiff alleges that Detective Daab and Detective Granshaw had no reason to

place Plaintiff's photograph in the photograph array shown to Mr. Svanidize and Mr. Koberidze

relating to the February 2012 robbery.  <u>Docket No. 23-1</u> ¶¶ 35-36, 44.  Assuming, <u>arguendo</u>, that

that is true, that allegation alone cannot support a Section 1983 false arrest claim against him.

<u>See</u> <u>Crews</u>, 996 F. Supp. 2d at 205 n. 11.[9]  Plaintiff's constitutional rights were not violated

---

[9] I note that Plaintiff does not allege that Detective Daab conducted an improperly suggestive
photo array, for example, by guiding Mr. Svanidize and Mr. Koberidze to identify Plaintiff.  <u>See</u>
<u>U.S. v. Bautista</u>, 23 F.3d 726, 731 & n.7 (2d Cir. 1994) (discussing that an improperly suggestive
pretrial identification procedure and photographic array are inadmissible evidence unless the
government shows that there was an independent basis of reliability for the identification);
<u>Simons v. N.Y.Simons v. N.Y.</u>, 472 F. Supp. 2d 253, 261-62 (N.D.N.Y. 2007) (citations omitted)
(discussing that an arrest premised upon probable cause derived from an improperly suggestive

when his photograph was included in the February 22, 2012 photograph array. In the context of a false arrest claim, "there is no requirement that probable cause, or any other legal threshold, be met to place a suspect's photograph in an array." Crews v. County of Nassau, 996 F. Supp. 2d 186, 205 n.11 (E.D.N.Y. 2014) (dismissing the plaintiff's false arrest claim on summary judgment because, other than the plaintiff's allegation that the police had no reason to include his photograph, the plaintiff had no evidence that the photograph array was improperly suggestive and therefore unable to support probable cause). Plaintiff has no claim against Detective Daab and Detective Granshaw for the February 22, 2012 photo array.

Plaintiff also complains that Detective Daab drafted a February 25, 2012 report which referred to Plaintiff as "perpetrator" and not "suspect." Docket No. 20; Docket No. 20-10. This nomenclature on an internal police document has no significance as to whether Detective Daab did anything to contribute to Plaintiff's allegedly false arrest. Inasmuch as "the subjective intent of the law enforcement officer is irrelevant for purposes of establishing a false arrest and/or malicious prosecution claim," Detective Daab's allegedly inaccurate use of the word "perpetrator," which had no legal force or effect, cannot be the basis for Detective Daab's liability pursuant to Plaintiff's false-arrest-related claim or malicious-prosecution-related claim. See Bond v. U.S., 529 U.S. 334, 338 n.2 (2000); Tretola v. Cnty. of Nassau, 14 F. Supp. 3d 58, 70 (E.D.N.Y. 2014) (stating that a police officer's "motivation is not germane in assessing the presence or absence of probable cause" such that the officer's "thought processes must be divorced from the [probable cause] assessment").

Finally, Plaintiff broadly argues with respect to Detective Daab and Detective Granshaw that they framed him, and "it is wrong for law enforcement agents to frame or manufacture

photo array may not be privileged).

evidence against innocent citizens." Docket No. 25. I, of course, do not disagree that that would be wrong, but Plaintiff must offer some plausible, specific allegation as to how Detective Daab and Detective Granshaw framed him for the Court to permit the allegation to proceed. Yet beyond the February 22, 2012 photograph array, which I have just explained does not constitute a constitutional violation, as Plaintiff did not allege how Detective Daab and Detective Granshaw framed him, such that adding Detective Daab and Detective Granshaw to this action as Defendants would be futile. See Vessa v. City of White Plains, No. 12 Civ. 6989 (ER), 2014 WL 1271230, at *6 (S.D.N.Y. Mar. 27, 2014) (stating that the plaintiff's complaint failed to set forth any allegation supporting his belief that the defendants obtained a warrant using false or fabricated information and dismissing the related claim).

### 2. Plaintiff's Motion For Leave To File An Amended Complaint That Includes NYPD Sergeant Mara As A Defendant Should Be Denied

Plaintiff's allegations as to how Sergeant Mara was complicit in Detective Haber's fabrication of the second photograph array result are insufficient to plausibly support Plaintiff's false-arrest related and malicious prosecution-related claims against Sergeant Mara.[10] In sum, taking all of Plaintiff's allegations as true, a reasonable jury could not conclude, as Plaintiff claims is possible, that Sergeant Mara knew or should have known that Plaintiff was innocent or that probable cause was lacking when he issued the I-card authorizing Plaintiff's arrest for the February 2012 robbery. Docket No. 20; Docket No. 23-1 ¶¶ 54-55; Docket No. 12-12 (a copy of

---

[10] In addition to alleging in the Second Proposed Amended Complaint that Detective Haber did not conduct the February 29, 2012 photo array at all and fabricated a positive identification, Plaintiff appears to alternatively argue that Detective Haber conducted an improperly suggestive February 29, 2012 photo array and that during the February 29, 2012 photo array he commented, in contravention of police protocol, "about the procedure or next steps in the case." Docket No. 20 at 3-4. As to the latter comment, Plaintiff argues that it may have caused Mr. Koberidze to "blurt out" that Plaintiff was the robber. Id. My analysis of whether Sergeant Mara should have known that the second photo array result was false is the same under both theories.

the February 29, 2012 I-card referenced in Plaintiff's Second Proposed Amended Complaint classifying Plaintiff as "perpetrator probable cause to arrest").

In <u>Celestin v. City of N.Y.</u>, 581 F. Supp. 2d 420, 430-32 (E.D.N.Y. 2008), this Court ruled that an arresting officer had probable cause as a matter of law to make a warrantless arrest on the basis of an eyewitness's positive identification of the plaintiff as the perpetrator of the crime in a second photograph array, even though a first photograph array "failed to elicit an identification." "There is . . . no issue as to whether exculpatory evidence negated probable cause," the <u>Celestin</u> Court held. <u>Id.</u> at 432. Although the "police must not ignore exculpatory evidence that would void probable cause if taken into account, . . . once the evidence established probable cause, an officer is not required to continue . . . weighing information[.]" <u>Id.</u>; <u>see</u> <u>Yattoni v. Oakbrook Terrace</u>, 801 F. Supp. 140, 147 (N.D. Ill. 1992), <u>aff'd</u>, 14 F.3d 605 (7th Cir. 1993) (stating that the positive identification of a suspect in the second of two photograph arrays established probable cause so long as the totality of the circumstances did not create an undue risk of misidentification, and stating that "[p]resenting a witness with a second photo array, while not encouraged, is not in itself a suspect practice"). In other words, a first photograph array's failure to elicit an identification does not completely exculpate the suspect; instead, it goes to the second photograph array "identification's [evidentiary] weight," but not its admissibility. <u>U.S. v. Concepción</u>, 983 F.2d 369, 379 (2d Cir. 1992); <u>see</u> <u>O'Brien v. City of Yonkers</u>, No. 07 Civ. 3974 (KMK) (LMS), 2013 WL 1234966, at *14 (S.D.N.Y. Mar. 22, 2013) ("The law distinguishes between information that might call into question a witness's reliability—<u>i.e.</u>, inconsistent statements—and information tending to demonstrate that the witness identified somebody other than the accused as the perpetrator."); <u>People v. Covington</u>, 42 Misc.3d 1232(A), at *8 (N.Y. Sup. Ct. 2014) (collecting cases) ("It is well established that police have probable cause to arrest

when, absent materially impeaching circumstances, a complainant identified a defendant as the perpetrator of the crime.").

Plaintiff would argue that Celestin and Yattoni do not privilege Sergeant Mara's reliance upon Detective Haber's second photograph array result as a matter of law because there are reasons why Sergeant Mara should have known that Detective Haber fabricated evidence and thus credited the first photograph array instead. Docket No. 23-1 ¶¶ 54-55. In Poe v. Leonard, 282 F.3d 123, 142 (2d Cir. 2002), the Second Circuit considered the standard for what a supervisor "should have known" in the context of a plaintiff's Section 1983 privacy claim against her employer for a co-worker's surreptitious videotaping of her in a state of undress. The Court concluded the "appropriate inquiry" was whether the plaintiff had alleged

> sufficient facts to raise a triable issue of fact as to whether [the employer] knew or should have known that there was a high degree of risk that [the co-worker] would behave inappropriately with a woman during his assignment, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to [the plaintiff].

See Brooks v. Prack, -- F. Supp. 3d --, No. 12 Civ. 6338 (EAW), 2014 WL 7499458, at *7 (W.D.N.Y. Dec. 31, 2014) (dismissing the plaintiff's Section 1983 supervisory liability claims because the allegations did not show why the supervisor defendants "should have known that there was a high risk that [their subordinates] would behave inappropriately [and violate the plaintiff's due process rights in their execution of a hearing]. . . , but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk").

Here, Plaintiff makes no allegation as to why Sergeant Mara should have known that there was any risk to crediting Detective Haber's photograph array result. Plaintiff does not

allege Detective Haber had problems with truthfulness in the past, or that Sergeant Mara was aware of such problems.

Next, Plaintiff points to the reports about the photograph arrays. Insofar as the reports are incorporated by reference into the Second Proposed Amended Complaint, and in some instances have been submitted to the Court by Plaintiff himself, I have reviewed them and find that there is nothing in them which, when read together, would indicate that Sergeant Mara should have known that there was a risk that Detective Haber fabricated the second photograph array result and that Sergeant Mara deliberately or recklessly disregarded that risk. Docket No. 12-5; Docket No. 12-6; Docket No. 20-5; Docket No. 20-9.

For instance, Detective Daab's photograph array viewing report revealed that although Mr. Koberidze failed to identify Plaintiff in the February 22, 2012 photograph array, he remarked that "[o]ne of them looks like him but I'm not sure and I don't want to get the wrong guy in trouble." Docket No. 12-9; Docket No. 23-1 ¶ 40. Mr. Koberidze's comment that he felt that he recognized someone in the first photograph array (but was hesitant to make an identification) is not a circumstance which renders Celestin and Yanotti inapplicable to this case; if anything, it may make Detective Haber's statement to Sergeant Mara that Mr. Koberidze identified Plaintiff in a second photograph array more credible on its face than if Mr. Koberidze had not made that comment on February 22, 2012. Next, Detective Daab's investigative report revealed that Mr. Svanidize gave police the telephone number from which the robber had called him to arrange the meeting during which the Mr. Svanidize was robbed, Docket No. 12-6, and Plaintiff admits that four days before Sergeant Mara issued the I-card, Defendants learned that the robber's telephone number matched one that Plaintiff had given to the police as his own in 2008 (although it should be noted that Plaintiff states that the robber's number was traceable to

other individuals as well since 2008), Docket No. 25 at 1 n.1. Finally, Sergeant Mara learned from Sergeant Granshaw's report that that the robber had asked Mr. Svanidize to meet him at 94-37 215th Street, Queens Village, NY, Docket No. 12-5, and Sergeant Mara's I-card shows that Plaintiff's last known address was less than five blocks away, at 212-26 Jamaica Avenue, Queens, NY. Docket No. 12-12.

In light of Plaintiff's allegation and admission that Sergeant Mara knew all of these facts when he issued the I-card—(1) Mr. Koberidze's hesitance to identify someone in the first photograph array despite some recognition; (2) the coincidence of Plaintiff's telephone number and the robber's; (3) the proximity of the Plaintiff's last-known address and the scene of the crime; and (4) Mr. Koberidze's alleged identification of Plaintiff as the robber in a second photograph array, the holdings in Celestin and Yanotti are not undercut by special circumstances rendering the second photograph array results incredible. See Maron v. Cnty. of Albany, 166 F. App'x 540, 542 (2d Cir. 2006) (holding that an eyewitness's testimony and identification gives rise to probable cause, unless specific circumstances should lead the arresting officer to question the truthfulness of the witness); Donovan v. Briggs, 250 F. Supp. 2d 242, 251-52 (W.D.N.Y. 2003) ("Both New York State and federal courts have held that a purported crime victim's identification of the alleged culprit will generally suffice to create probable cause to arrest," provided that there is no "information to suggest that the witness' information is not credible.").

Lastly, Plaintiff argues that Sergeant Mara knew or should have known that Plaintiff did not commit the February 2012 robbery because Mr. Svanidize did not identify Plaintiff as the robber during the October 19, 2012 lineup. Docket No. 20; Docket No. 20-6. Plaintiff's Second Proposed Amended Complaint does not allege why Sergeant Mara would have known that that event transpired and the report submitted by Plaintiff does not clarify that point, either, as it was

approved by Lieutenant Klein, not Sergeant Mara.  Docket No. 20-6.  In any event, the

identification by one witness with the other supporting information without any countervailing

facts offered by Plaintiff is sufficient to find Plaintiff's claim is futile.

### 3.  Conclusion

In light of the foregoing, Plaintiff's I respectfully recommend that the District Court **deny**

Plaintiff's motion for leave to file an amended complaint that includes Detective Daab and

Detective Granshaw as Defendants relating to their involvement in the February 22, 2012

photograph array and alleged failure to intervene in Detective Haber's later actions.  I further

recommend that the District Court **deny** Plaintiff's motion for leave to file an amended

complaint that includes Sergeant Mara as a Defendant arising from his supervision of Detective

Haber, Detective Daab and Detective Granshaw and approval of the I-card authorizing Plaintiff's

arrest.

As Plaintiff's Second Proposed Amended Complaint does not allege that Detective Daab,

Detective Granshaw and Sergeant Mara committed any other wrongdoing, I recommend that the

District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes

Detective Daab, Detective Granshaw and Sergeant Mara as Defendants at all.

### iv.  Plaintiff's Motion For Leave To File An Amended Complaint That Includes NYPD Detective Puleo, NYDOC Captain Ellis And Commissioner Schriro As Defendants Should Be Denied

Plaintiff's allegation that Detective Puleo and NYDOC Captain Ellis issued the hold

order against Plaintiff directing that he be unconstitutionally detained after he completed his

five-day drug sentence does not state a false-arrest-related claim against Detective Puleo or

Captain Ellis.  Docket No. 23-1 ¶¶ 99-102.  The intended claim against Detective Puleo and

Captain Ellis is futile because Plaintiff fails to allege that the hold order was ever executed.

Instead, to use Plaintiff's exact language, he was arrested on April 9, 2012 "immediately after he had finished serving his sentence."[11] Id. ¶ 62 (emphasis added). Stated differently, Plaintiff completed his sentence and was immediately rearrested pursuant to a distinct matter, which does not give rise to any claim for an illegal hold order.

Plaintiff cites to two cases relating to his hold-order claim for the proposition that prison officials cannot confine an inmate beyond the terms of a court's sentencing order. See Vincent, 718 F.3d at 171 (stating that subjecting a prisoner to post-release supervision when that was not a part of his sentence violated the constitution); Engebretson v. Mahoney, 724 F.3d 1034, 1041 (9th Cir. 2013) (noting that many federal courts of appeal extend absolute immunity only to the fact of a prisoner's incarceration pursuant to a facially valid court order) (emphasis in original). I do not disagree with Plaintiff that courts have held that actual liberty deprivations without process can form the basis of a claim, but Plaintiff does not allege an actual liberty deprivation arising from the hold order here because there was no undue confinement traceable to the hold order. See Savino, 331 F.3d at 75 (stating that the plaintiff's awareness of confinement and non-consent to the confinement are, inter alia, elements of false arrest); Harewood, 2014 WL 6867942, at *12 (stating that among the elements of an excessive detention claim is that the actions of officers violated the plaintiff's right to be free from unreasonable/excessive detention).

Plaintiff submits to the Court that he was arrested even before he could leave the detention facility, because the arresting officers intercepted him before he could leave the premises. Docket No. 20-12. According to Plaintiff, he was waiting in line for three minutes with other released inmates to receive a Metro card before leaving the premises. Id. Plaintiff's

---

[11] Plaintiff has submitted a law enforcement report in the record to support his argument that the hold was executed. The evidence is a report stating that Detective Puleo asked Captain Ellis to notify him before Plaintiff was released. Docket No. 20-11. A reasonable jury could not find that this shows the hold was executed. Id.

allegation still would not permit a reasonable jury to find that the hold order was executed because Plaintiff alleges that he was going through the typical discharge process at the time.

In a related vein, Plaintiff argues that his false-arrest-related claim against Commissioner Schriro is founded upon the fact that she "established, authorized, approved, enabled and facilitated" the unlawful NYCDOC practice of holding inmates for a longer period than their court-ordered sentence. Docket No. 23-1 ¶ 61; Docket No. 20. As Plaintiff's allegations provide no foundation for a viable false-arrest-related claim against Detective Puleo and NYDOC Captain Ellis arising from the unexecuted hold order due to failure to plead the requisite elements of a false arrest/unreasonable detention claim, Plaintiff's supervisory liability claim against Commissioner Schriro is futile for the same reason. See Liberty Mutual Ins. Co., 746 F.3d at 502.

In light of the foregoing, I recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes Detective Puleo and NYDOC Captain Ellis as Defendants relating to their involvement in the alleged hold order. I similarly recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes Commissioner Schriro as a Defendant on the same basis.

As Plaintiff's Second Proposed Amended Complaint does not allege that Detective Puleo and Commissioner Schriro committed any other wrongdoing, I recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes Detective Puleo and Commissioner Schriro as Defendants at all.

As for NYDOC Captain Ellis, Plaintiff alleges that he was present during Plaintiff's April 9, 2012 arrest and so I will discuss whether there is a viable claim against him relating to those facts below.

**v. Plaintiff's Motion For Leave To File An Amended Complaint That Includes Captain Ellis, Detective Ward And Lieutenant Klein As Defendants On The Basis Of Their Participation In The April 9, 2012 Lineup Should Be Denied**

**1. Plaintiff's Motion For Leave To File An Amended Complaint That Includes NYDOC Captain Ellis As A Defendant On The Basis Of His Participation In the April 9, 2012 Arrest Should Be Denied**

Plaintiff's allegation that Captain Ellis acted in concert with police to arrest Plaintiff on April 9, 2012 "without cause" fails to state a valid false-arrest-related claim against Captain Ellis. Docket No. 23-1 ¶¶ 65-72.

A plaintiff arrested pursuant to a facially valid warrant does not have a viable false arrest claim. Southerland v. Garcia, 483 F. App'x 606, 608 (2d Cir. May 18, 2012); Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Santiago v. Fischer, No. 09 Civ. 1383 (DLI) (RML), 2009 WL 3852001, at *7 (E.D.N.Y. Nov. 18, 2009) ("An arrest based on a facially valid warrant, which results in an unlawful detention, does not give rise to an action for false arrest even though the warrant was erroneously or improperly issued."). The law in this regard is important because Plaintiff's Second Proposed Amended Complaint states that Sergeant Mara issued an I-card authorizing Plaintiff's arrest for the February 2012 robbery. Docket No. 23-1 ¶ 56; Docket No. 12-12. Although Plaintiff alleges that the I-card was invalid because it rested at least in part upon Detective Haber's alleged fabrication of evidence, Plaintiff does not allege how NYDOC Captain Ellis, or any officer for that matter, would have known that from the I-card's face. See Golphin v. City of N.Y., 2011 WL 4375679, at *2 (S.D.N.Y. Sept. 19, 2011) ("The basis [of the collective knowledge doctrine] is that officers must be able to assume that the information conveyed by their colleagues is accurate and reliable in order for law

enforcement to operate effectively. . . . Therefore, the doctrine also shields arresting officers when the basis of probable cause is later found false or mistaken.").

Plaintiff argues that he was not arrested for the February 2012 robbery but for the January 2012 robbery for which, according to Plaintiff, police had no cause to seize him whatsoever. Docket Nos. 11, 20. In effect, Plaintiff alleges that the police scrambled to find an alternate justification to justify his arrest after Mr. Sue failed to identify him as the January 2012 robber, and that Sergeant Mara's I-card proved a convenient discovery. Id. No reasonable jury could find that NYDOC Captain Ellis did not know that the I-card existed because Plaintiff admits that NYDOC Captain Ellis spoke to Detective Puleo about a hold order relating to the I-card at least three days before Plaintiff's April 9, 2012 arrest. See Finnegan v. Marhall, 574 F.3d 57, 61-62 (2d Cir. 2009) (stating that the probable cause analysis for a false arrest claims is an objective inquiry "that focuses on the facts available to the arresting officer at the time of the arrest"); Strawn v. Holohan, No. 04 Civ. 1292 (GLS) (DRH), 2008 WL 65586, at *6 n.9 (N.D.N.Y. Jan. 4, 2008) ("Under the collective knowledge doctrine, for purposes of assessing probable cause, the knowledge of one officer is presumed shared by all."). Furthermore, Plaintiff's Second Proposed Amended Complaint does not allege that NYDOC Captain Ellis knew about the January 2012 robbery before Plaintiff's arrest, or even how he could know, as he worked for the NYDOC, and not the NYPD, and was not investigating the January 2012 robbery himself.

### 2. Plaintiff's Motion For Leave To File An Amended Complaint That Includes Lieutenant Klein And Detective Ward As Defendants On The Basis Of Their Placing Plaintiff In The April 9, 2012 Lineup Should Be Denied

Plaintiff does not state a valid false-arrest-related or malicious-prosecution-related claim against Lieutenant Klein and Detective Ward stemming from their placing Plaintiff in a lineup at the precinct after Plaintiff's lawful April 9, 2012 arrest, and the motion to include these claims

against them should be denied.[12]  Docket No. 23-1; ¶¶ 62, 78-79; Docket No. 12-3; Docket No. 12-4.

"The expectations of privacy of an individual taken into police custody 'necessarily [are] of a diminished scope.'"  Maryland v. King, 133 S. Ct. 1958, 1978 (2013) (citing Bell v. Wolfish, 441 U.S. 520, 557 (1979)).  "Once an individual has been arrested on probable cause for a dangerous offense that may require detention before trial, . . . his or her expectations of privacy and freedom from police scrutiny are reduced."  King, 133 S. Ct. at 1978.

In Maryland v. King, 133 S. Ct. 1958, 1971 (2013), the Supreme Court considered whether Maryland's standard practice of collecting an arrestee's DNA with a cotton swab of his or her cheek pursuant to the Maryland DNA Collection Act ran afoul of the arrestee's Fourth Amendment rights, and held that it did not.  The Court observed that many routine booking procedures infringe an arrestee's privacy yet are justified by weightier government interests, for example, the correct identification of the suspect, identification of "risks for facility staff [and] for the existing detainee population," and the determination of "whether the individual should be released on bail."  King, 133 S. Ct. at 1972-73.  Applying the relevant test that "[t]he government interest must outweigh the degree to which the search invades an individual's legitimate expectations of privacy," the King Court ruled that the buccal swab of an arrestee's check for DNA evidence was a "brief and . . . minimal intrusion" involving "virtually no risk, trauma, or pain."  Id. at 1977-79.  "A brief intrusion of an arrestee's person is subject to the Fourth Amendment, but a swab of this nature does not increase the indignity already attendant to normal incidents of arrest."  Id.

---

[12] Plaintiff argues that it was unconstitutional for the police to arrest him without cause in order to place him in the lineup because a police manual states that a suspect must be lawfully arrested before he or she is placed in a lineup.  Docket No. 20, Exh. 1.  As discussed, Plaintiff's arrest was lawful because NYDOC Captain Ellis knew about the I-card for the February 2012 robbery.

As with the DNA swab, an individual's compelled appearance at the lineup may be considered a "seizure" of that person pursuant to the Fourth Amendment. See Biehunik v. Felicetta, 441 F.2d 228, 229-30 (2d Cir. 1971) ("[W]e [do not] question on this appeal that the compelled appearance at the lineup can be . . . a 'seizure[.]'"). Here, Plaintiff's allegations about the April 9, 2012 lineup before Mr. Sue suggest that it, like the DNA swab in King, was a "brief and minimal intrusion" as Plaintiff was already lawfully in the precinct on the basis of his arrest pursuant to the I-card for the February 2012 robbery, and Plaintiff makes no allegation that there was anything difficult or demeaning about the lineup to make it uniquely intrusive.[13]

Furthermore, Plaintiff makes no allegation that he objected to the lineup. See Keith v. City of N.Y., 2014 WL 6750211, at *11 (S.D.N.Y. Dec. 1, 2014) (stating that the plaintiff's placement in a lineup did not constitute an arrest because after the plaintiff went with the officers to the precinct the plaintiff "agreed to participate in the lineup"). In the absence of any particular allegation that the lineup was difficult, involuntary or marked by any other aggravating circumstance, a jury could not plausibly find that a lineup which did "not increase the indignity

---

[13] See e.g., U.S. Dionisio, 410 U.S. 1, 14 (1973) (finding that the petitioner had no reasonable expectation of privacy in the sound of his voice because "[l]ike a man's facial characteristics, . . . his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world."); see also U.S. v. Anderson, 490 F.2d 785, 788 (D.C. Cir. 1974) (rejecting an argument that the trial court erred in admitting a lineup identification of the defendant because the lineup was conducted without a court order upon the defendant's arrest for another offense, stating that so long as the lineup for a crime other than the one charged comports with due process, "the Government may place [a suspect] in a lineup for any number of offenses it chooses without prior court authorization"); U.S. v. Hill, No. 12 Cr. 214 (KAM), 2013 WL 3243657, at *8 (E.D.N.Y. June 26, 2013) (rejecting the defendant's motion to suppress the lineup identification from his criminal trial because although "[t]he Second Circuit has not addressed the question of whether a lawfully detained person can be compelled to appear in a lineup" concerning a charge unrelated to the charge for which the person is detained, "other circuits that have considered the issue have held that such compulsion is permissible") (listing cases); Aziz v. Warden of Clinton Corr. Facility, No. 89 Civ. 6053 (JSM), 1991 WL 278907, at *6 (S.D.N.Y. Dec. 18, 1991) (stating that due process does not require that a suspect "formally be accused of [a] crime before being placed in a lineup").

already attendant to normal incidents of arrest" occasioned a privacy intrusion that was anything but minimal. King, 133 S. Ct. at 1979.

On the other side of the scale, the government's interest in investigating Plaintiff's possible involvement in the January 2012 robbery would at the very least include providing information to a judicial officer relevant to setting an appropriate amount of bail. Plaintiff alleges that the police identified him as a suspect in the January 2012 robbery. Docket No. 23 ¶¶ 65-66.[14] As a result, it stands to reason that the police conducted the April 9, 2012 lineup knowing that a judicial officer setting bail would find it relevant that the defendant was involved in not one but two armed robberies.

Given Plaintiff's allegation that the police considered him as a suspect in the January 2012 robbery at that point, the government's interest in providing as much information to a judicial officer as possible about Plaintiff's alleged involvement in the January 2012 robbery in furtherance of public safety outweighs the brief and minimal privacy intrusion that Plaintiff, who already had diminished expectations of privacy as a result of the arrest, experienced. Consequently, a reasonable jury could not conclude that Lieutenant Klein's and Detective Ward's placement of Plaintiff in the April 9, 2012 lineup constituted a Fourth Amendment violation. Cf. Fate v. Charles, 24 F. Supp. 3d 337, 345 (S.D.N.Y. 2014) (holding that there was a genuine issue of material fact as to the constitutionality of a search of the plaintiff's naked body after he was arrested walking to the store for breakfast on a warrant because the fact that the plaintiff had no reason to anticipate the arrest undermined the government's interest in a body

---

[14] Plaintiff alleges that the police identified him as a suspect in the January 2012 robbery and "proceeded to frame [him]," but Mr. Sue's failure to identify Plaintiff contradicts the claim. If anything, the April 9, 2012 lineup redounded to Plaintiff's benefit as it appears that that is where the police's consideration of Plaintiff as a suspect in the January 2012 robbery ended. Docket No. 23 ¶¶ 65-71.

cavity search).

In addition to Plaintiff's presence in the lineup failing to establish a constitutional violation, I note that Mr. Sue failed to identify Plaintiff as the January 2012 robber during the lineup. In <u>Wray v. City of N.Y.</u>, 490 F.3d 189, 193 (2d Cir. 2007), the Second Circuit stated that it had never "held that a suggestive identification alone is a constitutional violation; rather, the constitutional violation [occurs when the suspect's] right to a fair trial [is] impaired by the admission of testimony regarding the unreliable identification." Applying the same principle here, in the absence of any allegation that the lineup had some consequence, Plaintiff's allegations cannot be interpreted to show that his constitutional rights were violated as a result of the way the lineup was done.

### 3.  Conclusion

In light of the foregoing, I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes NYDOC Captain Ellis as a Defendant relating to his involvement in the April 9, 2012 arrest and that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes Lieutenant Klein and Detective Ward as Defendants relating to their involvement in the April 9, 2012 lineup.

As Plaintiff's Second Proposed Amended Complaint contains no other allegations of wrongdoing as to NYDOC Captain Ellis (I earlier discussed the futility of the allegation against him relating to the hold order) and Detective Ward, I recommend that the District Court **deny** Plaintiff leave to file an amended complaint that includes NYDOC Captain Ellis and Detective Ward at all.

As for Lieutenant Klein, Plaintiff alleges that he was present during the October 19, 2012 lineup and the alleged October 19, 2012 assault and so I will discuss whether there is a viable

claim against him relating to those facts below.

### vi. Plaintiff's Motion For Leave To File An Amended Complaint That Includes Captain Chambers As A Defendant On The Basis Of His April 9, 2012 Comment Should Be Denied

Plaintiff's allegation that, on April 9, 2012, Captain Chambers stated that Plaintiff should be held and detained indefinitely, would not permit a reasonable jury to find that Captain Chambers violated Plaintiff's constitutional rights. Docket No. 23-1 ¶ 76. At the time, Plaintiff was already in custody, having been arrested for the February 2012 robbery such that Captain Chambers's comment was not an arbitrary order that Plaintiff be seized without process. Plaintiff alleges that Detective Roberts later "falsely stat[ing] to prosecutors, among other things, that the plaintiff stole certain property and was identified by an eyewitness in a photograph array which was conducted on February 22, 2012."[15] Id. ¶ 77.

These allegations cannot sustain a claim against Captain Chambers in this action. Captain Chambers's alleged comment set nothing new in motion. See Bond, 529 U.S. at 338 n.2 ("[T]he subjective intent of the law enforcement officer is irrelevant for purposes of establishing a false arrest and/or malicious prosecution claim."). At the moment the alleged remark was made, Plaintiff had already been arrested pursuant to Sergeant Mara's I-card relating to the February 2012 robbery, which stated that Plaintiff was armed, dangerous and wanted for robbery in the second degree. Docket No. 12-12; see Tretola v. Cnty. of Nassau, 14 F. Supp. 3d 58, 70 (E.D.N.Y. 2014) (stating that a police officer's "motivation is not germane in assessing the presence or absence of probable cause" such that the officer's "thought processes must be divorced from the [probable cause] assessment").

---

[15] Accepting Plaintiff's version of events as true, Detective Roberts misstated the date of Mr. Koberidze's alleged positive identification of Plaintiff as the robber, but the consequences were the same.

In light of the foregoing, I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes Captain Chambers as a Defendant on the basis of his April 9, 2012 comment.

As Plaintiff's Second Proposed Amended Complaint contains no other allegations of wrongdoing as to Captain Chambers, I recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes Captain Chambers at all.

### vii. Plaintiff's Motion For Leave To File An Amended Complaint That Includes Lieutenant Klein As A Defendant On The Basis Of His Supervision Of The October 19, 2012 Lineup Should Be Denied

Plaintiff's allegation that Lieutenant Klein supervised an October 19, 2012 lineup conducted by Detective Haber and in which Mr. Koberidze was unable to identify Plaintiff as the February 2012 robber is insufficient to state a false-arrest-related claim upon which relief can be granted. Docket No. 23-1 ¶¶ 83-90.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 677.

Here, Plaintiff's allegation about Lieutenant Klein's involvement in the October 19, 2012 lineup is that he "supervised" and was present, on which basis a reasonable jury could not conclude that Lieutenant Klein had any personal involvement rising to the level of an alleged violation of Plaintiff's constitutional rights. Docket No. 23-1 ¶ 83; Docket No. 12-7.[16] Plaintiff

---

[16] Plaintiff seems to concede that he has made insufficient allegations against Lieutenant Klein relating to his involvement in the October 19, 2012 lineup because Plaintiff states that the reason he does not seek to add another similarly situated individual present at the October 19, 2012 lineup—ADA Muñoz—is because ADA Muñoz "was identified as being merely present at the lineup. However, if it turns out from discovery that ADA Muñoz was involved and/or participated in any manner in the violation of the [P]laintiff's civil rights . . . , [P]laintiff will at that time seek leave to amend the [then-operative] Complaint to add/or join ADA Muñoz as a

would likely argue that Lieutenant Klein, after seeing Mr. Svanidize fail to identify Plaintiff as the February 2012 robber, failed to intervene in the unconstitutional perpetuation of Plaintiff's unreasonable detention until November 2012 for that crime. Although Plaintiff alleges Lieutenant Klein's presence at the lineup, Plaintiff does not allege Lieutenant Klein's role in Detective Haber's investigation of the February 2012 robbery, i.e., why he should have known how damaging Mr. Svanidize's failure to identify Plaintiff as the perpetrator was to the rest of the case that Detective Haber had built or was building against Plaintiff.

In light of the foregoing, I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes Lieutenant Klein as a Defendant on the basis of his alleged supervision of the October 19, 2012 lineup.

### viii. Plaintiff's Motion For Leave To File An Amended Complaint That Includes Lieutenant Klein As A Defendant On The Basis Of His Involvement In The Alleged October 19, 2012 Assault Should Be Granted

On the other hand, I find that Plaintiff has sufficiently alleged Lieutenant Klein's involvement in the alleged October 19, 2012 assault occurring after the lineup. Plaintiff alleges that Lieutenant Klein supervised the lineup which makes it reasonable to infer that Lieutenant Klein was physically present at the lineup, and Plaintiff alleges that "[a]s [he] was being led away from the lineup, . . . the NYPD officers involved in the lineup physically . . . assaulted [him]." Docket No. 23-1 ¶¶ 83-90. The allegation of Lieutenant Klein's presence during the assault and his presence for the subsequent refusal to provide Plaintiff with medical treatment is very weak, resting on Lieutenant Klein's undifferentiated membership in the group of "NYPD officers involved in the lineup," but the allegation is enough at this stage to permit the excessive-force-related claim to proceed against Lieutenant Klein. See Fernandez v. Kinray, Inc., 2014

[D]efendant." Docket No. 20.

WL 7399303, at *10 (E.D.N.Y. Dec. 30, 2014) ("[W]hen deciding whether to grant a motion to amend a complaint, courts must view the claims in the light most favorable to the plaintiff.").[17] The fact that Plaintiff does not make any allegation as to Lieutenant Klein's subjective state of mind during the physical assault is irrelevant, as an officer's use of excessive force against a pretrial detainee is measured by an objective-unreasonableness standard. See Kingsley, 2015 WL 2473447, at *6.

In light of the foregoing, I respectfully recommend that the District Court **grant** Plaintiff's motion for leave to file an amended complaint that includes Lieutenant Klein as a Defendant on the basis of his alleged presence during the alleged October 19, 2012 assault and refusal of medical care.

> **d. Plaintiff's Motion To Include Federal And New York State Constitutional Due Process Claims In An Amended Complaint Should Be Denied To The Extent That The Due Process Claims Address The Same Alleged Misconduct For Which More Specific Constitutional And Tort Claims Exist, But Should Be Granted With Respect To Federal And New York State Constitutional Due Process Claims Resting Upon Allegations That Detective Haber And Lieutenant Klein Were Deliberately Indifferent To Plaintiff's Medical Needs**

Plaintiff seeks to prosecute various Section 1983 constitutional due process claims for alleged violations of his Fourth Amendment right to be free from false arrest, unreasonable detention and malicious prosecution; the motion should be denied. Docket No. 23-1 ¶¶ 99-110, 136-140. When "the protections giving rise to [a] plaintiff's false arrest and imprisonment and

---

[17] I note that Plaintiff's allegations are confusing with respect to all relevant Defendants relating to the alleged denial of his October 19, 2012 request for medical treatment for the injuries he sustained in the alleged assault. According to Plaintiff, he asked "Defendants" to be taken to the hospital but that they did not grant his request because "his arrest processing and arraignment would be delayed." Docket No. 23-1 ¶ 91. No specific Defendant is named, but I will assume that Plaintiff is still referring to the "officers involved in the [October 19, 2012] lineup" at this point, i.e., Detective Haber and Lieutenant Klein. As this event allegedly took place on October 19, 2012, which was over six months after Plaintiff's April 9, 2012 arrest and arraignment and approximately one month before the November 13, 2012 dismissal of Plaintiff's charges, it is not clear what "arrest processing and arraignment" would have been delayed. Id.

malicious prosecution claims are found in the Fourth Amendment, [the] plaintiff cannot assert a

Fourteenth Amendment" substantive or procedural due process claim on the same basis.

Guadagni v. N.Y.C. Tranit Auth., No. 08 Civ. 3163 (CPS) (SMG), 2009 WL 1910953, at *8-9

(E.D.N.Y. June 30, 2009) (citing Ambrose v. City of N.Y., No. 02 Civ. 10200 (KMK), 2009 WL

890106, at *16 n.9 (S.D.N.Y. Mar. 31, 2009)). "The Framers considered the matter of pretrial

deprivations of liberty and drafted the Fourth Amendment to address it." Albright v. Oliver, 510

U.S. 266, 274-75 (1994) (plurality opinion).

 The same is true for Plaintiff's New York State constitutional due process claims, which

are brought to address alleged constitutional violations that can be vindicated through more

specific Section 1983 and New York State tort claims permitting civil damages. See Hayut v.

State Univ. of N.Y., 352 F.3d 733, 754-55 (2d Cir. 2003) (dismissing state equal protection claim

that mirrored Section 1983 claim that had been dismissed); Mesa v. City of N.Y., No. 09 Civ.

10464 (JPO), 2013 WL 31002, at *33 (S.D.N.Y. Jan. 3, 2013) (granting summary judgment for

the defendants with respect to the plaintiffs' New York State Constitution due process claim for

various reasons because plaintiffs are usually not permitted to recover civil damages under the

Constitution's self-executing provisions when there are Section 1983 and state tort analogs

through which civil damages remedies are available); Johns v. Home Depot U.S.A., Inc., 221

F.R.D. 400, 408 n.3 (S.D.N.Y. 2004) ("Due process and search and seizure rights under the New

York state and United States [C]onstitutions are coextensive with one another."); Coakley v.

Jaffe, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999) (stating that "the New York State Constitution's

guarantee[] of . . . due process [is] virtually coextensive with those of the U.S. Constitution . . . .

[A]ccordingly, the conclusion . . . that the plaintiffs' due process rights were not violated dictates

the conclusion that the plaintiffs' parallel right under the state constitution were also not

infringed").

The exception to my recommendation that Plaintiff's due process claims should not be permitted is as to Plaintiff's allegations that Detective Haber and Lieutenant Klein were deliberately indifferent to his medical needs. As discussed above, Plaintiff's claim rests on an allegation, uncontested by Defendants at this stage, that Detective Haber and Lieutenant Klein did not provide Plaintiff with the medical care he requested on October 19, 2012. See Section III.c.viii., supra. Thus the deliberate indifference claim survives and, insofar as Plaintiff was not convicted of a crime at the moment of the October 19, 2012 incident, the pertinent constitutional guarantee for the deliberate indifference claim is the Fourteenth Amendment's Due Process Clause. See Ingraham, 430 U.S. at 671; Smith, 2006 WL 1458404, at *5 ("A plaintiff may state a claim under the Eighth Amendment [for cruel and unusual punishment] only if he or she has been adjudged guilty by a criminal proceeding at the time of the events giving rise to the Eighth Amendment claim."). Plaintiff's motion to bring a due process claim thus should be granted as to the deliberate indifference claim against Detective Haber and Lieutenant Klein.

In light of the foregoing, I respectfully recommend that the District Court **grant in part** and **deny in part** Plaintiff's motion for leave to file an amended complaint containing federal and state due process claims. I recommend that the District Court **grant** Plaintiff's motion to the extent that it seeks to bring a deliberate indifference claim against Detective Haber and Lieutenant Klein under the Fourteenth Amendment's Due Process Clause and the New York state counterpart. I further recommend that the District Court **deny** Plaintiff's motion to the extent that it seeks to bring a due process claim against any Defendant relating to Plaintiff's alleged false arrest, unreasonable detention, malicious prosecution, failure to intervene, and other claims also protected by specific constitutional amendments and New York State tort claims.

**e. Plaintiff's Motion To File An Amended Complaint That Includes State Claims Against The Proposed Defendants Should Be Granted In Part And Denied In Part**

Plaintiff's Second Proposed Amended Complaint contains two groups of state claims which Plaintiff seeks to bring against the Proposed Defendants. One group contains New York State constitutional claims and the other contains New York State tort and negligence claims.

I discussed above that Plaintiff's Section 1983 constitutional tort claims are "substantially the same" as their New York State tort counterparts, although the federal claims have an added "under color of state law" requirement. See Russo, 479 F.3d at 204; Posr, 944 F.2d at 96. Therefore, to the extent that I have recommended the denial of Plaintiff's motion for leave to file an amended complaint bringing Section 1983 claims against Detective Daab, Detective Granshaw, Sergeant Mara, NYDOC Captain Ellis, Detective Puleo, Commissioner Schriro, Detective Ward, Captain Chambers and Lieutenant Klein (but with respect to Lieutenant Klein, only relative to his involvement in the October 19, 2012 lineup), I also recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint bringing analog state claims against these same Proposed Defendants. Similarly, my recommendation that the Eighth Amendment's cruel and unusual punishment protections do not apply to Plaintiff as a pre-trial detainee also results in a recommendation that the District Court **deny** Plaintiff's requested cruel and unusual punishment claim against Detective Haber and Lieutenant Klein under Article 1, § 5 of the New York State Constitution. See Powlowski v. Wullich, 102 A.D.2d 575, 583-84 (N.Y.A.D. 4th Dep't 1984) (stating that New York's protection from cruel and unusual punishment for convicted prisoners does not apply to pre-trial detainees).

I note that Plaintiff also proposes a negligent infliction of emotional distress ("NEID") and an intentional infliction of emotional distress ("IIED") under New York tort law against all

Proposed Defendants. "The state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (3) severe emotional distress." Bender v. City of N.Y., 78 F.3d 787, 790 (2d Cir. 1996). The elements of an action for negligent infliction of emotional distress are a "breach of a duty owed to [the] plaintiff which exposes him or her to an unreasonable risk of bodily injury or death." Castanza v. Town of Brookhaven, 700 F. Supp. 2d 277, 293 (E.D.N.Y. Mar. 22, 2010). Extreme and outrageous conduct is also an element of negligent infliction of emotional distress. Franco v. Diaz, 51 F. Supp. 3d 235 (E.D.N.Y. 2014).

Generally, courts view those "causes of action [as] duplicative of . . . causes of action alleging false arrest and false imprisonment, malicious prosecution, and assault and battery." Rodger v. City of N.Y., 106 A.D.3d 1068, 1070 (N.Y.A.D. 2d Dep't 2013) (listing cases); see Brewton v. City of N.Y., 550 F. Supp. 2d 355, 370 (E.D.N.Y. 2008) (Even if the plaintiff's false arrest qualified as extreme and outrageous, "to the extent that [the plaintiff] contends she suffered emotional distress as a result of the false arrest, her claim is encompassed entirely within other tort remedies and is thus precluded under New York law."); Fischer v. Maloney, 43 N.Y.2d 553 (1978) ("[I]t may be questioned whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability, [such as] malicious prosecution and abuse of process."). In contrast, in Levine v. Gurney, 149 A.D.2d 473, 474 (N.Y.A.D. 2d Dep't 1989), the court affirmed the denial of summary judgment on the plaintiff's intentional infliction of extreme emotional distress claim, finding that the defendant's alleged false accusation of the plaintiff could suffice as sufficiently extreme and outrageous.

Assuming, _arguendo_, that I were to follow _Levine_, here, unlike _Levine_, Plaintiff's alleged false-arrest-related and malicious-prosecution-related claims against the Proposed Defendants (with the exception of Detective Roberts, Sergeant Pierre and Detective Haber) are futile and thus _Levine_ would not even provide support to permitting an intentional infliction of emotional distress claim or negligent infliction of emotional distress claim to proceed against those same Proposed Defendants on the basis of acts which fall short of false arrest or malicious prosecution.

In sum, as I recommend that the District Court **grant** Plaintiff's motion to file an amended complaint that includes Section 1983 claims against Detective Roberts, Sergeant Pierre and Detective Haber arising from alleged Fourth Amendment violations resulting from, _inter alia_, false arrest, failure to intervene, unreasonable detention, fabrication of evidence, denial of the right to a fair trial, malicious prosecution and excessive force, I also recommend that the District Court **grant** Plaintiff's motion to file an amended complaint with counterpart New York State Constitutional and New York State tort claims against these same Defendants, _i.e._, claims pursuant to Article I, § 12 of the New York State Constitution and New York State tort law for false arrest, false imprisonment, assault and battery, and malicious prosecution.

In addition, as I recommend that the District Court **grant** Plaintiff's motion to file an amended complaint that includes a Section 1983 due process claim against Detective Haber and Lieutenant Klein relating to alleged deliberate indifference to medical needs, I also recommend that the District Court **grant** Plaintiff's motion to file an amended complaint with claims against these same Defendants pursuant to Article I, § 6 of the New York State Constitution.

In light of the foregoing, I respectfully recommend that the District Court **grant in part** and **deny in part** Plaintiff's motion for leave to file an amended complaint against Proposed Defendants containing New York State constitutional and tort law claims premised upon the

same facts I found insufficient to support analog Section 1983 claims against them.

### IV. Conclusion

In light of the foregoing, I respectfully recommend that the District Court **grant in part** and **deny in part** Plaintiff's motion for leave to amend.

I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes any federal or state conspiracy claims.

Second, I respectfully recommend that the District Court **grant** Plaintiff's motion for leave to file an amended complaint that includes federal and state claims against Detective Roberts, Sergeant Pierre and Detective Haber, as Defendants consent.  Docket Nos. 12, 20.

Third, I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes false-arrest-related and malicious-prosecution-related Section 1983 claims and analog New York State constitutional and tort claims against Detective Daab, Detective Granshaw, Sergeant Mara, NYDOC Captain Ellis, Detective Puleo, Commissioner Schriro, Detective Ward and Captain Chambers.  In short, an amended complaint may not name these individuals as Defendants at all.

Fourth, I respectfully recommend that the District Court **deny** Plaintiff's motion for leave to file an amended complaint that includes federal and state claims against Lieutenant Klein based upon his involvement in the October 19, 2012 lineup.

Fifth, I respectfully recommend that the District Court **grant** Plaintiff's motion for leave to file an amended complaint that includes a federal excessive-force-related claim and analog state claims against Lieutenant Klein based upon his involvement in the alleged October 19, 2012 assault.

Sixth, I respectfully recommend that the District Court **grant in part** and **deny in part**

Plaintiff's motion for leave to file an amended complaint that includes federal and state due process claims. The only part of Plaintiff's motion to bring due process claims that I recommend that the District Court **grant** relate to claims which rest upon allegations that Detective Haber and Lieutenant Klein were deliberately indifferent to Plaintiff's medical needs.

Finally, in the event that the District Court accepts my recommendations, I respectfully recommend that the District Court **order** Plaintiff to file a Third Proposed Amended Complaint reflecting the Court's instructions on ECF within ten days of the publication of the District Court's decision. Once the Third Amended Complaint is filed and served, Defendants are to timely answer.

### V. Objections

Written objections to this report and recommendation must be filed within fourteen days of service of this report and in accordance with the Individual Rules of the Honorable Sterling Johnson, Jr. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated: Brooklyn, New York
June 26, 2015

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge