# UGO UZOH, P.C.

ATTORNEYS AT LAW
304 LIVINGSTON STREET, SUITE 2R
BROOKLYN, NEW YORK 11217
TEL: (718) 874-6045, FAX: (718) 576-2685

September 23, 2016

**By ECF**

Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   Kroutchev Demosthene v. City of New York, et al.
14 CV 816 (SJ) (VMS)

Dear Judge Scanlon:

This firm represents Plaintiff Kroutchev Demosthene, in connection with the above referenced matter. Pursuant to Your Honor's *Individual Motion Practice and Rules*, plaintiff respectfully submits this letter in support of his motion for an Order directing the release of the grand jury minutes and/or testimony of the police officer(s) who testified on or about May 14, 2012, concerning Indictment # 1278/2012. On or about July 14, 2016, plaintiff requested the grand jury materials from New York State Supreme Court, Queens County, which supervised the grand jury proceedings. Appended hereto as **Exhibit 1** is a copy of plaintiff's July 14, 2016 moving papers. Subsequently, on or about August 26, 2016, Queens County District Attorney's office filed an opposition to the plaintiff's aforesaid application. Appended hereto as **Exhibit 2** is a copy of Queens County District Attorney's August 26, 2016 opposition papers. Thereafter, on or about September 7, 2016, plaintiff submitted his reply affirmation in further support of his motion or application. Appended hereto as **Exhibit 3** is a copy of plaintiff's September 7, 2016 reply affirmation. By order dated September 7, 2016, New York State Supreme Court, Queens County, Honorable Barry Kron, denied plaintiff's application. Appended hereto as **Exhibit 4** is a copy of the September 7, 2016 order. It is however well established that "[i]n determining whether to order disclosure of state grand jury testimony, 'federal law, and not state law, governs the scope of the privileges at issue.'" *United States of America v. Quattrone*, 2003 U.S. Dist. LEXIS 17234, at *1 (S.D.N.Y. Sept. 30, 2003).

## I.   BACKGROUND

On or about February 6, 2014, plaintiff commenced the instant action alleging various claims against the defendants -- including defendant City of New York and several of its police officers and/or employees assigned to New York City Police Department. (Docket No. 1.) In addition to other claims, plaintiff asserts § 1983 claims against the defendants and alleges,

Honorable Vera M. Scanlon
September 23, 2016
Page 2 of 5

among other things, that the police officers unlawfully assaulted, arrested and fabricated evidence against him on or about April 9, 2012. (Compl.)

Specifically, the police charged the plaintiff with, among other things, PL 160.15(4) 'Robbery in the first degree' and PL 160.05 'Robbery in the third degree'. In addition to other things, police indicated in their reports that the plaintiff was allegedly identified by an individual named Koba Koberidze from a photo array allegedly conducted by the police on February 22, 2012 and/or on February 29, 2012, as the individual who allegedly robbed him of his iPhone at gunpoint on February 22, 2012. Police forwarded their aforesaid reports to the prosecutors, who relied upon said reports in initiating criminal action against the plaintiff. Upon information and belief, police further testified falsely in the grand jury that Koberidze allegedly identified the plaintiff from a photo array conducted by the police on February 22, 2012, and/or on February 29, 2012, as the individual who allegedly robbed him of his iPhone at gunpoint on February 22, 2012. However, the record clearly shows that Koberidze did not identify the plaintiff from any photo array on February 22, 2012, February 29, 2012 or any other time.

Notably, police claimed in their reports that they allegedly conducted a "re-interview" of Koberidze on February 29, 2012, at approximately 12:20 p.m., and that Koberidze during the purported re-interview allegedly informed them that he "VIEWED PHOTOS (PHOTO ARRAY WITH DETECTIVE DAAB [ON FEBRUARY 22, 2012]) REGARDING THE PERPETRATOR." Police then went on to indicate that Koberidze allegedly informed them that he recognized "someone" from the photos but was hesitant to select his photo because "HE BELIEVED THE PERPERTRATOR WOULD BE SENTENCED TO 10 YEARS IN JAIL BECAUSE OF HIS SELECTION." While there is no indication as to how Koberidze was able to allegedly recognize the someone, police went on to indicate that Koberidze allegedly stated "THAT HE WAS UNAWARE THAT HE WOULD THEN SEE THE PERSON IN THE PICTURE IN PERSON AT A LATER DATE." There is no indication as to what led Koberidze to believe that he would allegedly see this person at a later date, and police did not indicate that they said anything to Koberidze prior to the alleged statement by Koberidze. In any event, police indicated that after Koberidze allegedly made the statement, they then went on to allegedly explain "THE FUTURE PRECEDING [SIC] TO [KOBERIDZE]". While police did not elaborate on "THE FUTURE PRECEDING [SIC]" they allegedly explained to Koberidze, police indicated that soon after their explanation, Koberidze allegedly blurted out "THE GUY IN PICTURE NUMBER 5 IS THE GUY WHO ROBBED ME[.]"

Regardless, the record is clear that Koberidze did not view any photo array on February 29, 2012, and did not view any photo array and did not identify any individual from any photo array on said date.[1] *Cf. People v. Dotson*, 30 A.D.3d 181 (1st Dep't 2006) (pretrial revelation of

---

[1] It should be noted that the Court concluded in the Report & Recommendation dated June 26, 2015 ("R&R") that the plaintiff was identified by Koberidze and that there was probable cause for the plaintiff's arrest and prosecution. (Docket N0. 36.) Plaintiff concedes that the R&R which the Court, Judge Johnson, adopted in its entirety on August 28, 2015, is the law of the case. The doctrine of "law of the case" instructs that "'if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case.'" *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996).

Honorable Vera M. Scanlon
September 23, 2016
Page 3 of 5

silent recognition at a show-up was not an identification, "because the witness did not, at that time, view defendant or his likeness in any form.").

Following his April 9, 2012 arrest, and on the basis of false allegations manufactured by the police, plaintiff was incarcerated at Rikers Island for approximately seven (7) months thereafter.

## II.    DISCUSSION

While New York law prohibits disclosure of "the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding . . ., this state law does not bind federal courts." *Felmine v. City of New York*, 2009 U.S. Dist. LEXIS 100819, at *1-*2 (E.D.N.Y. Oct. 29, 2009). However, "federal courts will not order the disclosure of State grand jury proceedings unless the party seeking to compel the disclosure (1) gives the State courts the initial opportunity to adjudicate the request and (2) can demonstrate a 'particularized need' for the grand jury materials." *Id.* at *2. Here, as noted above, plaintiff requested the grand jury materials from the state court which supervised the grand jury proceedings. *See Anilao v. Spota*, 918 F. Supp. 2d 157, 170 (E.D.N.Y. 2013) ("In general, requests for disclosure of grand jury materials should be first directed to the court that supervised the grand jury's activities."). Additionally, plaintiff stated a compelling and particularized need for disclosure (*see* **IIA**, *infra*).

### A.    Plaintiff stated a compelling and particularized need for disclosure

To demonstrate particularized need, parties must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. *See Palmer v. Estate of Stuart*, 2004 U.S. Dist. LEXIS 21788, at *6-*7 (S.D.N.Y. Nov. 1, 2004).

### 1.    The material sought is needed to avoid a possible injustice

Here, plaintiff was incarcerated and maliciously prosecuted for approximately seven (7) months following his arrest. Plaintiff suffered, and continues to suffer, severe emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to his reputation, as a result of the actions of the police. Because plaintiff was indicted by the grand jury, it is necessary for him to establish what occurred in the grand jury and to demonstrate that the proceedings in the grand jury were tainted -- by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney. *See Rothstein v. Carriere*, 373 F.3d 275, 282-83, 290 (2nd Cir. 2004). *See also Alvarado v. City of New York*, 2009 U.S. Dist. LEXIS 15591, at *4 (E.D.N.Y. Feb. 26, 2009) ("In New York, overcoming the presumption of probable cause requires evidence 'establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, [or] that they have withheld evidence or otherwise acted in bad faith.'").

Honorable Vera M. Scanlon
September 23, 2016
Page 4 of 5

Here, as noted above, police informed the prosecutors that plaintiff was allegedly identified by Koberidze from a photo array on February 22, 2012 and/or February 29, 2012. Some of the police reports and/or information from defendant John Roberts seem to indicate that the plaintiff was allegedly identified by Koberidze from a photo array on February 22, 2012. Other police reports and/or information from Gary Haber seem to indicate that the plaintiff was allegedly identified by Koberidze from a photo array on February 29, 2012. Because police did not conduct any photo array on February 29, 2012, and knowing fully well that the basis for their alleged February 29, 2012 identification was the purported statement by Koberidze during the alleged re-interview, police, upon information and belief, decided to present Roberts' version in the grand jury.[2] Police made it clear that they wanted to incarcerate the plaintiff for the rest of his life and that they were prepared to go to any length to achieve their aforesaid goal. Upon information and belief, Roberts who was not involved in the February 22, 2012 photo array testified in the grand jury that the plaintiff was allegedly identified by Koberidze from a photo array on February 22, 2012.[3] The grand jury ultimately indicted the plaintiff on the basis of police testimony identifying the plaintiff as the alleged robber.[4] It appears from the above that the police conduct in this case was wanton, reckless and malicious. Plaintiff however may not be able to show or prove this wanton, reckless and malicious police conduct, and may not even be able to maintain his malicious prosecution claim, without the grand jury transcripts. Thus, the police who have maintained that they had probable cause to arrest, incarcerate and maliciously prosecute the plaintiff for approximately seven (7) months may not be held accountable for their misconduct.[5] Accordingly, plaintiff seeks the testimony of any police officer who testified in the grand jury in order to avoid a possible injustice. *Cf. United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990) (where, as here, a movant's request includes specific factual allegations of government misconduct, a review of grand jury minutes may be permitted).

## 2.    The need for disclosure is greater than the need for continued secrecy

Here, the need for disclosure is greater than the need for secrecy as "the public interest . . . will be[] served" by holding the police officers accountable for their misconduct and protecting the petitioner against the encroachments of unfounded accusations. *Matter of James v. Donovan*, 130 A.D.3d 1032, 1037 (2d Dep't 2015). Notably, reasons supporting secrecy where a private citizen testifies to the grand jury do not in logic apply to a government agent or employee as s/he is not likely to be inhibited by subsequent disclosure. *See Dale v. Bartels*, 532 F. Supp. 973, 976 (S.D.N.Y. 1982). *See also People ex rel. Hirschberg v. Bd. of Supervisors*, 251 N.Y. 156, 170 (1929) (a public official cannot seek shelter behind the rule of secrecy to prevent inquiry into his or her malfeasance or misfeasance in office).

---

[2] Upon information and belief, Koberidze did not testify in the grand jury.

[3] The basis for this belief is the fact that Roberts identified himself as the plaintiff's arresting officer, executed the criminal complaint and appeared to be the primary contact with the prosecutors.

[4] As the Complaint alleges Koberidze is not familiar with the plaintiff in any manner. Thus, the only way Koberidze could have positively identified the plaintiff to the police was by pointing him out -- whether in a photo array, lineup or show-up. Accordingly, the only way the plaintiff could have been connected to the alleged robbery by the grand jury was by police testimony indicating that Koberidze allegedly identified plaintiff on February 22, 2012 as the alleged robber.

[5] *See Zahrey v. Coffey*, 221 F.3d 342, 351-53 (2d Cir. 2000) (civil rights action may be brought against police officers who deliberately supplied misleading information to the prosecutor or grand jury).

Honorable Vera M. Scanlon
September 23, 2016
Page 5 of 5

**3.      The request is structured to cover only material so needed**

Plaintiff merely seeks the testimony of any police officer who testified in the grand jury in order to "avoid a possible injustice." *Scheiner v. Wallace*, 1995 U.S. Dist. LEXIS 18873, at *13-*14 (S.D.N.Y. Dec. 18, 1995).

**4.      Plaintiff does not seek to use the minutes against any police officer who testified in the grand jury**

Plaintiff merely seeks the testimony of any police officer who testified in the grand jury in order to establish what occurred in the grand jury and the information that were presented to the grand jury. Without the grand jury minutes, the parties may not be able to clarify the record, and the plaintiff may not be able to pursue or maintain his civil rights lawsuit. Plaintiff does not seek the "use of [any] witness's own grand jury testimony against that witness if he or she subsequently becomes a § 1983 defendant." *Frederick v. City of New York*, 2012 U.S. Dist. LEXIS 150223, at *12 (S.D.N.Y. Oct. 11, 2012).

## III.    CONCLUSION

In sum, based upon a consideration of all of the factual circumstances described above, plaintiff respectfully requests that the Court grant his motion for an Order directing the release of the grand jury minutes and/or testimony of the police officer(s) who testified on or about May 14, 2012, concerning Indictment # 1278/2012.

Thank you for your time and consideration of plaintiff's request.

Respectfully submitted,

/s/

Ugochukwu Uzoh

cc:     Assistant Corporation Counsel Joshua M. Friedman [via ECF]